

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-26-2009

# Mendez v. Puerto Rican Intl Co

Precedential or Non-Precedential: Precedential

Docket No. 07-4053

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

## Recommended Citation

"Mendez v. Puerto Rican Intl Co" (2009). *2009 Decisions.* Paper 1953.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1953

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

IN THE UNITED STATES COURT
OF APPEALS
FOR THE THIRD CIRCUIT

———————

NO. 07-4053

———————


JUAN MENDEZ; MERCEDES CRUZ; MAXIMO
GUERRERO; FELIPE FIGUEROA; HERIBERTO LABOY;
MARCEL HIPPOLYTE; SANDRO RIVERA; LUCHO
HERNANDEZ; GEORGIE ANTHONY ACOSTA; SHAWN
SMITH; MARCELO LANDERS; ORLANDO PAGAN;
MICHAEL BYNOE; ELROD BAPTISTE; BERTRIL
WILLIAM; THOMAS DUPARL; JOSEPH NICHOLAS;
ORSON OLANDO FLEMMING; GREGORY LA FORCE;
PIUS AURELIEN; CATHERINE SABIN; MIGUEL LIRIANO;
JOSH GONDELEC; NATHANIEL HOBSON; MARK
VITALIS; MARCO RIJO; SABINO CASTILLO; IRA
CLAXTON; ALFRED JAMES; HUMBERTO ORTIZ;
JOSEPH OSCAR; ERNESTO RODRIGUEZ; SENCION
GUERRERO; ALFREDO DIAZ; CYRIL THOMAS;
SOSTENES MONTILLA; ANGEL OSCAR LOPEZ
VELASQUEZ; ANGEL OSCAR MARTINEZ VELASQUEZ;
KEITH LEWIS SIMON, JR.; JORGE RODRIGUEZ; ROBERT

L. JONES CHARLESMAN; WALDEMAR OLMEDA; RODOLF R. KOCK; LUIS A. MEDINA; BIENVENIDO CARRASCO; RAQUEL CONCEPCION; JOSE GONZALEZ; CARLOS GARCIA

v.

PUERTO RICAN INTERNATIONAL COMPANIES, INC.; FLUOR CORPORATION, d/b/a Fluor Daniel Construction; PLANT PERFORMANCE SERVICES LLC (P2S); HOVENSA LLC
(D.C. No. 05-cv-00174)


SHAWN SMITH; MICHAEL BYNOE

v.

PUERTO RICAN INTERNATIONAL COMPANIES; FLUOR CORPORATION d/b/a Fluor Daniel Construction; PLANT PERFORMANCE SERVICE LLC; HOVENSA LLC
(D.C. No. 05-cv-00199)

Fluor Corporation
Plant Performances Services, LLC,
Appellants

_____

2

On Appeal From the United States District Court
For the District of the Virgin Islands
(D.C. Civil Action Nos. 05-cv-00174 and 05-cv-00199)
District Judge: Hon. Raymond L. Finch

———————

Argued December 8, 2008

BEFORE: FISHER, JORDAN and STAPLETON,
*Circuit Judges*

(Opinion Filed: January 26, 2009)

———————

Simone R.D. Francis (Argued)
Charles E. Engeman
Ogletree, Deakins, Nash, Smoak & Stewart
1336 Beltjen Road, Suite 201
Charlotte Amalie
St. Thomas, USVI 00802
  Attorneys for Appellants

Valerie M. Nannery (Argued)
John Vail
Center for Constitutional Litigation, P.C.
777 Sixth Street, N.W., Suite 520
Washington, D.C. 20001-3723
  and

3

K. Glenda Cameron
Lee J. Rohn
Rohn & Cameron, L.L.C.
1101 King Street, Suite 2
Christiansted
St. Croix, USVI  00820-0000
  Attorneys for Appellees

_____

OPINION OF THE COURT

_____

STAPLETON, <u>Circuit Judge</u>:

I.

Forty-nine individual plaintiffs brought this employment discrimination and retaliation case against appellants Plant Performance Services, LLC ("PPS"), and Fluor Corporation ("Fluor"), as well as others.  Appellants moved to stay the case under Section 3 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 3, alleging "on information and belief" that all of the plaintiffs at the initiation of their employment had entered into written agreements committing themselves to arbitrate disputes of this kind.  Forty-one plaintiffs responded with affidavits averring that they had not entered into such agreements. Appellants produced written agreements signed by eight of the plaintiffs containing arbitration clauses sufficiently broad to

4

cover this case. The District Court granted the motion to stay pending arbitration with respect to the eight plaintiffs who had entered into arbitration agreements. It denied the motion to stay with respect to the remaining plaintiffs, however, "because there [was] no evidence that any of the other plaintiffs agreed to arbitrate their disputes." App. at 3. PPS and Fluor filed this appeal.

## II.

We must first address our jurisdiction to entertain this appeal. As a general rule, a district court's order is appealable under our final order jurisdiction, 28 U.S.C. § 1291, only when the decision "'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 275 (1988) (citing *Catlin v. United States*, 324 U.S. 229, 233 (1945)); *see Michelson v. Citicorp Nat'l Serv., Inc.*, 138 F.3d 508, 513 (3d Cir. 1998). Stay orders normally are not appealable final orders because they merely delay proceedings in the suit. *Marcus v. Twp of Abington*, 38 F.3d 1367, 1370 (3d Cir. 1994) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 10 n.11 (1983)). However, Section 16(a)(1)(A) of the FAA provides that an "appeal may be taken from . . . an order . . . refusing a stay of any action under section 3 of" the FAA. 9 U.S.C. § 16(a)(1)(A). We have held that this section "confers appellate jurisdiction to review a denial of a motion for a stay pending arbitration which alleges a prima facie case of entitlement thereto under Section 3 of the FAA." *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 213 (3d Cir. 2007).

5

Section 3 provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

While the District Court was correct in concluding that the record contained no admissible evidence of a written agreement with respect to the forty-one plaintiffs whose cases were not stayed and while that fact gives rise to the sole issue for resolution on the merits of this appeal, PPS's and Fluor's motion clearly alleged a *prima facie* showing of entitlement to a Section 3 stay with respect to all plaintiffs. Accordingly, PPS and Fluor are entitled to a merits review of the District Court's denial of a stay under Section 16(a)(1)(A) of the FAA.[1]

---

[1]Given our ruling in *Ehleiter* that *prima facie* allegations of entitlement to a Section 3 stay will support our jurisdiction, PPS and Fluor are entitled to a review of both the District

6

III.

Turning to the merits, the issue for resolution is whether a defendant who is entitled to arbitrate an issue which it has with one plaintiff in a suit can insist on a mandatory stay of litigation of issues it has with other plaintiffs who are not committed to arbitrate those issues. We conclude that Section 3 was not intended to mandate curtailment of the litigation rights of anyone who has not agreed to arbitrate any of the issues before the court.

We acknowledge at the outset that Section 3 can be read literally to confer a right to a mandatory stay in the context of this case. Section 3 is an integral part of a statutory scheme, however, and reading it in the context of the FAA as a whole, we decline to attribute that intent to Congress.

The purpose of the FAA is to render agreements to arbitrate fully enforceable. 9 U.S.C. § 2 (a contract to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract"). The purpose of Section 3, in particular, is to guarantee that a party who has secured the agreement of another to arbitrate rather than litigate a dispute will reap the full benefits of its bargain. In short, the "liberal policy 'favoring

Court's determination that no admissible evidence of arbitration agreements signed by forty-one plaintiffs had been tendered and its holding that the absence of such evidence required denial of a stay. There is no dispute on appeal as to the former issue.

7

arbitration agreements . . . is at bottom a policy guaranteeing the enforcement of private contractual arrangements.'" *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 194 (3d Cir. 2001) (quoting *Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99, 104-05 (3d Cir. 2000)) (alteration in original). Accordingly, "under the FAA, 'a court may compel a party to arbitrate where that party has entered into a written agreement to arbitrate that covers the dispute.'" *Id.* Because Congress thus limited the rights it created in the FAA to situations involving corresponding obligations voluntarily assumed by another, we decline appellants' invitation to interpret Section 3 in a way that would mandate the imposition of a material burden on a party's right to litigate claims it has not agreed to arbitrate. While Section 3, as appellants read it, would postpone rather than eliminate a party's right to litigate its claims against another, it would nevertheless defer that right for the duration of a proceeding over which the constrained party has no control and would deprive the Court of any discretion to consider the impact of that delay on that party. We find no persuasive evidence in the FAA for sanctioning such a burden.

Section 3 is drafted to fit the paradigm situation in which a motion for a stay pending arbitration occurs – a plaintiff brings suit on a claim involving an issue it is obligated to arbitrate under an agreement in writing with a defendant and that defendant seeks to stay the litigation pending arbitration. The defendant is entitled to a mandatory stay of the "suit or proceeding" in such circumstances providing it "is not in default in proceeding with such arbitration." While Section 3 can reasonably be read to speak to situations in which the "suit or

8

proceeding" involves a non-arbitrable "issue" between the parties as well as the arbitrable "one," we do not believe it can reasonably be read to resolve issues presented in situations involving a party who has not committed itself to arbitrate any issue before the court.

Appellants' reading of Section 3 imposes a mandatory stay on a party's right to litigate a claim it is free to litigate depending on the fortuity of whether there happens to be other parties to the suit who have agreed to arbitrate a different claim, whether it be related or unrelated. The slate of parties that wind up before a district court in litigation is unpredictable and quite frequently not within the control of an individual litigant. While the plaintiffs can here be said to have joined together voluntarily, it is unlikely that forty-one of them did so with knowledge of the contractual arrangements of the remaining eight. More troubling, a party who is free to litigate and wishes to do so may find itself by a plaintiff's choice involuntarily joined with defendants who are obligated to arbitrate even unrelated claims. And there are numerous other situations in which litigants who are free to litigate a claim could lose their right to do so by being involuntarily joined with parties who are not free to litigate some issue in suit – class actions and consolidations most readily come to mind.

Appellants would thus read Section 3 as intended to address all of the myriad of circumstances in which a party who is free to litigate might find itself in multi-party litigation involving a party who has agreed to arbitrate and to dictate in all that the party's right to court access be curtailed without any consideration of the impact of that curtailment. We decline to

9

attribute such an arbitrary result to Congress based on the limited scope of Section 3. We find it far more likely that Congress intended Section 3 to be limited to the situation it directly addresses and to leave situations involving parties who have undertaken no obligation to arbitrate for resolution in accordance with the discretion of the court. It is, of course, true, as the Supreme Court has put it:

> In some cases, of course, it may be advisable to stay litigation among the non-arbitrating parties pending the outcome of the arbitration. That decision is one left to the district court (or to the state trial court under applicable state procedural rules) as a matter of its discretion to control its docket. See generally *Landis v. North American Co.*, 299 U.S. 248, 254-255 (1936).

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20, n.23 (1983).

We find support for our limited reading of Section 3 in cases from four of our sister Courts of Appeals. In *IDS Life Ins. Co. v. SunAmerica, Inc.*, 103 F.3d 524 (7th Cir. 1996), for example, the two plaintiffs and two of the four defendants were members of the National Association of Securities Dealers and, accordingly, parties to an agreement to arbitrate disputes. All four defendants moved for a stay of the district court proceedings pending arbitration. The District Court granted the motion to stay the plaintiffs' claims against the two defendants who had agreed to arbitrate but denied the motion to stay the

plaintiffs' claims against the other defendants. The Court of Appeals affirmed, holding:

> Although not expressly so limited, section 3 assumes and the case law holds that the movant for a stay, in order to be entitled to a stay under the arbitration act, must be a party to the agreement to arbitrate, as must be the person sought to be stayed. . . . The only purpose that we can ascribe to the word "issue" in section 3 is to enable litigation to be stayed pending arbitration even if only one of the issues in the litigation is subject to an agreement to arbitrate. The statute has no application to "issues" in cases between different parties. Parallel proceedings, one judicial, one arbitral, are governed instead, as cases such as *Nederlandse Erts-Tankersmaatschappij, N.V. v. Isbrandtsen Co., supra,* 339 F.2d at 441, and *Sierra Rutile Ltd. v. Katz,* 937 F.2d 743, 750 (2d Cir. 1991), recognize, by the normal rules for parallel-proceeding abstention.

*Id.* at 529; *see also Citrus Marketing Bd. of Israel v. J. Lauritzen A/S*, 943 F.2d 220, 224-25 (2d Cir. 1991) ("We have construed section 3 not to authorize a stay at the behest of . . . a nonparty to the arbitration agreement. . . . [H]owever, we deem it appropriate to point out that 'the district court had inherent power to grant the requested stay.'") (quoting *Nederlandse*, 339 F.2d at 441).

11

We find support as well in so-called "equitable estoppel" cases holding that Section 3 is inapplicable where the party seeking a mandatory stay was not a party to a written arbitration agreement with the party opposing the motion but relied upon an agreement to arbitrate between other parties to the suit having similar or identical issues between them. *See Carlisle v. Curtis, Mallet-Prevost, Cole & Mosle, LLP*, 521 F.3d 597 (6th Cir. 2008), *cert. granted*, 129 S. Ct. 529 (Nov. 7, 2008) (No. 08-146); *In re Universal Serv. Fund Tel. Billing Practice Litig. v. Sprint Commc'n Co., L.P.*, 428 F.3d 940 (10th Cir. 2005).

The Fifth Circuit Court of Appeals' reading of Section 3 is at odds with ours, but, even there, we have found no case which would require a holding that the stay was improperly denied here. The law of that Circuit is most recently reviewed in *Waste Mgmt., Inc. v. Residuos Industriales Multiquim, S.A. de C.V.*, 372 F.3d 339 (5th Cir. 2004). The Court there held that a subsidiary company was entitled to a mandatory stay of litigation with its former parent pending the outcome of arbitration between the former parent company and the then current parent company, despite the facts that the subsidiary was not a party to the arbitration agreement between the parents and that the parties to the arbitration agreement were not both parties to the suit.

The Court began by acknowledging that "§ 3 usually applies only to the parties to an arbitration agreement," citing *Adams v. Ga. Gulf Corp.*, 237 F.3d 538, 540 (5th Cir. 2001) ("The denial of the benefit of the mandatory stay provision to nonsignatories has been grounded in the recognition that the nonsignatory's litigation with an arbitrating party cannot be

12

referred to arbitration."). 372 F.3d at 342. The Court nevertheless gave Section 3 the following reading:

> [T]he first issue we must resolve is whether § 3 gives RIMSA [the subsidiary] standing to invoke the arbitral rights of the signatories to an arbitration agreement. A parsing of the language of § 3 demonstrates that, in certain limited circumstances, non-signatories do have the right to ask the court for a *mandatory* stay of litigation, in favor of pending arbitration to which they are not a party. That is, in any suit brought in federal court "upon any issue referable to arbitration" under a written arbitration agreement, "the court . . . *shall* on application of one of the parties" stay the suit. 9 U.S.C. § 3 (emphasis added). The grammatical structure of this sentence would seem to make clear that *any* of the parties to the suit can apply to the court for a mandatory stay, and the court must grant the stay if the claim at issue is indeed covered by the arbitration agreement. Although the final phrase of the statute – "providing the applicant for the stay is not in default in proceeding with such arbitration" – suggests that Congress contemplated that the litigant applying for the stay would also be a party to the arbitration, the preceding language allows for the anomalous situation where a non-signatory requests a stay of litigation on an issue covered by an arbitration agreement.

13

*Id.* at 342.

The *Waste Management* Court then applied Section 3 as so interpreted to the facts before it:

> We thus turn to the issue of whether WM's [the former parent] claims against RIMSA, a non-signatory, are "referable to arbitration" under the agreement with Onyx [the current parent]. Synthesizing this Court's precedent, several factors emerge for invoking § 3 on the application of a non-signatory: 1) the arbitrated and litigated disputes must involve the same operative facts; 2) the claims asserted in the arbitration and litigation must be "inherently inseparable"; and 3) the litigation must have a "critical impact" on the arbitration. *See, e.g., Hill*, 282 F.3d at 347; *Harvey*, 199 F.3d at 795-96. The question is not ultimately one of weighing potential harm to the interests of the non-signatory, but of determining whether proceeding with litigation will destroy the signatories' right to a meaningful arbitration. *Adams*, 237 F.3d at 541.

*Id.* at 343 (footnote omitted).

With respect, we believe the criteria that have been developed in Fifth Circuit jurisprudence find more in Section 3 than its text will support and would appear more appropriate to serve as guides for a district court's exercise of its inherent discretion. Clearly, those criteria deprive Section 3 of the bright

14

line periphery we believe it was intended to have.[2]  In any event, we are not satisfied by the record before us that these criteria have been met.[3]

## IV.

We here join with our sister Courts of Appeals which have held that, in order for a party to be the subject of a mandatory stay pending arbitration under Section 3 of the FAA, that party must have committed itself to arbitrate one or more issues in suit.  The District Court's order of August 13, 2007,

---

[2]The absence of such a bright line periphery may prove troublesome, among other reasons, because of the determinative role Section 3 plays in defining Section 16(a)(1)(A) appellate jurisdiction.  *See DSMC, Inc. v. Convera Corp.*, 349 F.3d 679, 683 (D.C. Cir. 2003) (citing *Grubart, Inc. v. Great Lakes Dredge & Dock*, 513 U.S. 527, 547 (1995)) ("jurisdictional rules should be, to the extent possible, clear, predictable, bright-line rules that can be applied to determine jurisdiction with a fair degree of certainty").

[3]While the parties have briefed the issue of whether the District Court "abused its discretion" in denying the stay, the District Court did not exercise its discretion.  Moreover, the denial of a stay based on an exercise of the District Court's discretion, as opposed to the denial of a mandatory stay based on a failure to meet the requirements of Section 3, would be a non-final order over which we would have no jurisdiction. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983).

15

will be affirmed.