NOT PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

NO. 08-4550
_____

RICHARD SILVA, An Individual;
SNA, INC.; SEAWIND, INC.
                    Appellants

v.

CRAIG EASTER, An Individual;
SEASTAR, INC.; PRECISION DESIGN, INC.;
PAUL ARRAY, An Individual;
HORIZON UNLIMITED
_____

On Appeal from the United States District Court
For the Eastern District of Pennsylvania
(D.C. Civil No. 2-00-cv-04666)
District Judge:  Hon. Petrese B. Tucker

_____

Argued November 3, 2010

BEFORE:  SCIRICA, STAPLETON and ROTH,
*Circuit Judges*

(Opinion Filed: November 18, 2010)

_____

Terry E. Silva, Esq. (Argued)
Silva Legal Professionals, P.C.
1500 Walnut Street, Suite 700
Philadelphia, PA  19102
  *Attorney for Appellants*

Michael T. Farrell, Esq. (Argued)
106 West Front Street
Media, PA 19063
  *Attorney for Appellee Paul Array*

Joseph S. Mitchell, III, Esq.
1500 John F. Kennedy Boulevard, Suite 1700
Two Penn Center Plaza
Philadelphia, PA 19102
  *Attorney for Appellees Horizon Unlimited, Inc.;*
  *Precision Design, Inc.; Seastar, Inc.; and Craig*
  *Easter*

_____

OPINION OF THE COURT
_____

STAPLETON, *Circuit Judge:*

I.

This trademark infringement litigation was initiated in 2000 and settled in May 2004. Since then, the parties have had numerous disputes concerning performance under the settlement agreement.

The settlement agreement provided *inter alia* that defendants would deliver a Seastar prototype aircraft owned by defendant Seastar Aircraft Inc. to plaintiffs at the Chester County Airport in Pennsylvania on or before May 3, 2005. In the interim, defendants' agent, defendant Paul Array, would have the use of the prototype and the defendants would maintain it, have it inspected, and preserve its value. As a part of this arrangement for the postponed transfer of the prototype, the agreement required defendants to make two $25,000 payments to plaintiffs on May 7 and June 1, 2004. "In the event of prototype delivery and acceptance" those funds were to "be paid back to

2

Defendants." App. at A-5. Also, in the event of such delivery and acceptance, a prior judgment in favor of plaintiffs and against defendants Array and Horizon Unlimited would be "marked satisfied." "In the event of breach, the judgment [would] remain." *Id.*

Defendants did not deliver the prototype to plaintiffs on or before May 3, 2005, and plaintiffs filed a "Petition for Contempt" on June 10, 2005, seeking to enforce the settlement agreement. In addition to the failure to deliver, plaintiffs alleged a number of other breaches of the agreement and sought damages arising therefrom as well as fees and costs associated with enforcing the agreement. The petition asked for "judgment" in plaintiffs' favor. App. at A-184.

On November 4, 2005, the District Court entered an order directing that title to the prototype be deemed transferred to plaintiff SNA, Inc., and that the transfer be immediately reflected on the records of the FAA. Ten months later, on September 5, 2006, the District Court entered an order dismissing plaintiffs' petition for contempt as "moot" because "Plaintiffs [had] acquired all rights, title and interest to the Seastar Aircraft" as a result of its earlier order. Despite the unqualified terms of this dismissal, it is clear that the District Court did not regard it as a final order and realized that plaintiffs still had claims before it because on the very same day, it set those claims down for trial on November 6, 2006.

On November 17, 2006, plaintiffs filed proposed findings of fact and conclusions of law asserting *inter alia* that the defendants had failed, as required by the agreement, to have the prototype maintained or inspected and had damaged it. As a result of this and the failure to deliver, plaintiffs had expended funds to find the prototype in Florida, to

3

store and repair it there, and to have it inspected. Plaintiffs asked for a finding that they had lost sales of the prototype because it was delivered late and damaged. Plaintiffs sought to recover their attorneys' fees for the contempt proceeding which at that point totaled $71,785.44.

Plaintiffs' claims were ultimately called for trial on November 20, 2006. No findings of fact or conclusions of law regarding plaintiffs' breach of contract claims were issued by this trial. On July 19, 2007, the District Court did order defendant Array to "pay the costs incurred by Plaintiff Silva related to [the] inspection of the Seastar prototype plane." App. at A-295.

On January 27, 2008, defendant Array filed a "Motion . . . To Compel Compliance" with the settlement agreement alleging receipt of the prototype by "the Plaintiff" and seeking an order directing the payment of $50,000, plus interest. Plaintiffs' response to this motion noted that there were currently outstanding and undecided a number of claims seeking amounts due to them as a result of defendants' breaches of the settlement agreement. That response further asserted that plaintiffs had had to sell the prototype at a significantly reduced price because of the delay and damage to the aircraft.

On June 3, 2008, the District Court denied Array's Motion to Compel payment to him of $50,000 and ruled that the "deposit paid by Defendant Array to Plaintiffs for use of the Seastar prototype aircraft shall be used to offset the monetary damages incurred by Plaintiffs in connection with the transfer of the Seastar prototype aircraft – i.e., inspection, repair, and storage costs, and loss in sales value." App. at A 313. The Court

4

then ordered plaintiff to file "an itemized list of the aforementioned monetary damages incurred along with appropriate documentation." *Id*.

"Plaintiffs' Statement of Damage Claims on Contempt" commenced with a recitation that it was being filed because the Court had directed plaintiffs to "provide an updated list of the damages evidence so far submitted in these proceedings." App. at A-315. Plaintiffs' statement provided, *inter alia*, the following list of damage claims:

> 1) the inspection of the aircraft by Harry Shannon ("Shannon") and the cost of the inspection; 2) repair damage – damage that had been done to the aircraft by Paul Array ("Array") while in his possession, repaired by Shannon and paid by Plaintiffs; 3) Plaintiffs' cost of tie-down fees which had been unpaid; 4) Plaintiffs' cost of additional tie-down fees after locating the aircraft; 5) payment of Shannon's bill; 6) Plaintiffs' payment of court costs associated with taking Shannon's deposition; 7) Plaintiffs' payment of the inspection that was to have been performed upon the aircraft but had not been performed by the Defendants; 8) Plaintiffs' payment for transfer of websites that had never been dismantled or transferred; 9) Plaintiffs' legal fees and costs associated with the breaches and enforcement of the SACO; 10) reinstatement of the two hundred ninety five thousand, one hundred thirty-three dollars and eighty-nine cents ($295,133.89) judgment of Judge Katz; 11) reinstatement of the eighty thousand dollars ($80,000.00) from Judge Shapiro's litigation; 12) legal fees and costs to be submitted as related to these proceedings.

App. at A-318. Damage amounts were stated for most but not all of these items. Documentation for some was attached or was represented as having been previously submitted to the Court. With respect to "loss in sales value," a declaration of Silva under 28 U.S.C. § 1746 was attached in which he stated his opinion that he had lost "approximately two hundred thousand dollars." App. at A-441. This was based on documentation indicating that defendants Array and Seastar had offered the prototype for

5

sale in March of 2005 for $399,000 and the fact that Silva had ultimately been able to sell it for only $190,000.

As is apparent from this description, plaintiffs' statement was not limited to "damages incurred in connection with the transfer of the Seastar aircraft." Nor did it include documentation for all such damages.

The first of the orders from which this appeal was taken was entered on September 3, 2008. It ordered plaintiffs to return to defendant Array within fifteen days "the sum of the deposit paid . . . for use of the Seastar prototype aircraft pursuant" to the settlement agreement. The Court found that the plaintiffs' statement "contains neither an itemized list of monetary damages nor any documentation to support the damages Plaintiffs claim." It concluded that "[b]ecause Plaintiffs failed to substantiate their claim for offset, Plaintiffs shall return the deposit paid by Defendant Array." App. at A-4.

Plaintiffs moved for reconsideration and their motion was denied on October 21, 2008. Defendant Array was found to be entitled to the deposit because plaintiffs had again failed "to substantiate their claim for offset." App. at A-3.

This timely appeal followed on November 13, 2008. In it, plaintiffs insist that (1) no proof was submitted by or required of Array that he, or any of the defendants, was entitled to money; (2) the settlement agreement did not call for the return of the $50,000 under the circumstances reflected in the record; (3) the District Court abused its discretion in rejecting their tender in support of an offset; and (4) in any event, the District Court erred in directing the payment to defendant Array alone. We express no view on the merits of plaintiffs' appeal because we conclude that we have no jurisdiction.

6

II.

Defendant Array, the only appellee to file a brief, takes the position that this appeal is from two interlocutory orders and should be dismissed for lack of a final order. On the other hand, plaintiffs, while insisting that they still had unadjudicated claims when the orders were entered, nevertheless maintain that they are final orders and that we have jurisdiction under 28 U.S.C. § 1291. We agree with Array.

As we read the record, the orders appealed from address solely defendant Array's entitlement to an immediate return of the $50,000 payment and whether plaintiffs are entitled to "an offset" against that amount. Those orders determined that defendant Array was entitled to an immediate return of the entire amount without offset. They do not purport to resolve and extinguish all of plaintiffs' affirmative breach of contract claims pending before the District Court when they were entered,[1] especially in light of the fact that the District Court did not "find . . . facts specially and state its conclusions of law separately" on those claims, as required by Fed. R. Civ. P. 52(a)(1). A final order "ends the litigation on the merits and leaves nothing for the Court to do but execute the judgment." *Mendez v. Puerto Rican Int'l Cos.*, 553 F.3d 709, 710 (3d Cir. 2009) (internal quotation and citations omitted). Here, numerous claims arising from the same subject matter remain for the Court to resolve, many of which appear to have been tried before defendant Array asserted his entitlement to a refund of his deposit. It is clear that such

---

[1] We realize that the June 3, 2008, order directing plaintiffs to file an itemized list of damages referred to the $50,000 payment as an offset against plaintiffs' damages. However, the orders appealed from clearly held only that plaintiffs' claims for an offset against *the $50,000* were not substantiated. They adjudicated nothing beyond defendant Array's entitlement to return of the deposit without offset.

7

claims survived the dismissal of plaintiffs' initial contempt motion; otherwise, the Court would not have scheduled trial on the same day that it entered the dismissal order.

In *Saber v. FinanceAmerica Credit Corp.*, 843 F.2d 697 (3d Cir. 1988), as here, we were confronted with a situation where the District Court had granted a motion to enforce a settlement agreement calling for the payment of money but where another claim remained unadjudicated before it. The order appealed from required two defendants to pay plaintiffs $35,000 within twenty-one days. We held that this order was not final and that we had no jurisdiction under 28 U.S.C. § 1291. We hold the same here.

This holding does not fully resolve the matter of our jurisdiction, however. Plaintiffs maintain that we have jurisdiction under 28 U.S.C. § 1292(b) as well because the orders from which they appeal grant an injunction. We rejected a similar argument in *Saber*. As we observed there:

> A settlement agreement is a contract, and an order enforcing a contract is ordinarily described as an order for specific performance. . . . The fact that a specific date for compliance is attached to an order for specific performance of the settlement agreement does not by itself transform the enforcement order into a mandatory injunction. Nor is the specific performance order made an injunction merely by inclusion of an order to pay money. . . . *Cf. Jaffee v. United States*, 592 F.2d 712, 715 (3d Cir. 1979) ("A plaintiff cannot transform a claim for damages into an equitable action by asking for an injunction that orders the payment of money.").

*Id.* at 702-03.[2]

---

[2] Here, as in *Saber*, the order to pay money has not been enforced by a contempt citation. Accordingly, as in *Saber*, it is unnecessary to decide whether an order to pay money in such circumstances would be appealable under § 1292(a)(1).

III.

This appeal will be dismissed for want of jurisdiction.

---

After the filing of this appeal, the District Court denied a motion of defendant Array for contempt and sanctions and stayed enforcement of the orders appealed by plaintiffs.