## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

CHAROLETTE SKINNER,
Individually and on behalf of the
Estate of ALBERT SKINNER;
JUDITH POWERS; and BRUCE
SKINNER,

   Plaintiff,

v.

PENINSULA HEALTHCARE
SERVICES, LLC, a Delaware
Limited Liability Company,
Individually and d/b/a CADIA
REHABILITATION
RENAISSANCE; and LONG
TERM CARE CORP.,

   Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

C.A. No.: N20C-09-178 FJJ

Submitted: February 19, 2021
Decided: March 1, 2021

**ON DEFENDANTS' MOTION TO DISMISS:
DENIED IN PART AND GRANTED IN PART
ON DEFENDANTS' MOTION TO STAY: DENIED**

**OPINION AND ORDER**

*Kelley M. Huff, Esquire,* Shelsby & Leoni, Wilmington, Delaware, Attorneys for Plaintiffs

*Maria R. Granaudo Gesty, Esquire,* Burns White LLC, Wilmington, Delaware, Attorneys for Defendants

**Jones, J.**

In January of 2020 Albert Skinner ("Albert" or "Mr. Skinner") fell at his home and fractured his left hip. As a result of this accident, Albert was taken to Beebe Hospital in Lewes, Delaware, where he underwent surgery. Following his surgery, Albert was transferred to a Cadia Rehabilitation Renaissance ("Cadia") home facility in Millsboro, Delaware, for rehabilitation following surgery. During his stay at Cadia, Mr. Skinner fell and was found on the bathroom floor. He was transported back to Beebe Hospital and underwent surgery to his right hip. Albert eventually went to another rehab facility. Albert's health steadily declined, and he died on February 11, 2020.

Albert is survived by his wife Charolette and his children Judith Powers ("Judith") and Bruce Skinner ("Bruce"). Albert's surviving relatives filed a Complaint against Cadia on September 18, 2020, alleging negligence and medical malpractice arising from the care and treatment provided to Albert while he was a resident at Cadia. The Complaint asserts two claims: a survival claim and wrongful death claims.

Cadia has moved to dismiss Plaintiffs' complaint, arguing that the Court lacks subject matter jurisdiction because the matter is subject to binding arbitration pursuant to an agreement signed by Charolette as power of attorney for Albert. In the alternative, Cadia has moved the Court to stay those claims not subject to arbitration until those claims which are subject to arbitration have been resolved

2

through arbitration. For the reasons stated herein Cadia's Motion to Dismiss the wrongful death claims is **DENIED**, the Motion to Dismiss the survivor claim is **GRANTED**, and the Motion to Stay is **DENIED**.

## STANDARD OF REVIEW

Cadia moves to dismiss based on Superior Court Civil Rule 12(b)(1), claiming that the Superior Court lacks subject matter jurisdiction over the claims in the Complaint. It is well-settled in Delaware that the power to compel arbitration lies exclusively with the Court of Chancery.[1] This Court has held, however, that is has jurisdiction to determine whether a valid and enforceable arbitration agreement exists for purposes of determining whether it has subject matter jurisdiction.[2] In reviewing such a motion, a court may consider matters outside the pleadings, such as testimony and affidavits.[3]

On a Motion to Dismiss under Rule 12(b)(1), the Court must accept every well-pled allegation as true and draw all reasonable inferences in the non-movant's favor.[4] A Motion to Dismiss should be denied unless it appears to a "reasonable certainty" that the plaintiff would not be entitled to relief under any set of facts that could be proved to support them.[5]

---

[1] 10 *Del. C.* §5701.
[2] *Bruce Jones, et al. v. 810 Broom Street Operations Inc.*, 2014 WL 1347746 (Del Super. 2014); *Aquila of Delaware, Inc. v. Wilmington Trust Company*, 2011 WL 4908406 (Del. Super. 2011).
[3] *Cecilia Abernathy, et al. v. Brandywine Urology Consultants, PA*, 2021 WL 211144 (Del. Super. 2021).
[4] *Donald H. Loudon, Jr., v. Archer-Daniels-Midland Co., et al.*, 700 A.2d 135, 140 (Del. Supr. 1997).
[5] *Id.*

## FACTS

The following facts are drawn from the pleadings and other filings in this litigation thus far, and are viewed in the light most favorable to the Plaintiffs as the non-moving party:

On January 2, 2020, Albert fell at his home and fractured his left hip.[6] He was taken to Beebe Hospital in Lewes, Delaware, where doctors performed surgery on him. On January 5, Albert was transferred to Cadia to undergo rehabilitation. On January 8, while still rehabilitating at Cadia, Albert fell and injured his right hip. A Cadia employee found Albert on the floor of his bathroom, and he was returned to Beebe where he underwent surgery to his right hip. Albert was then transferred to a different rehabilitation facility. Albert's health declined and he passed away on February 11. He is survived by his wife, Charolette and his two adult children, Judith and Bruce.

Prior to Albert's initial accident on January 2nd, Albert had executed a document that gave Charolette his power of attorney. Upon Albert's admission to Cadia, Charolette signed several admission documents under her power of attorney for Albert. Neither of Charolette's children were present when she signed these admission documents. One of the documents signed by Charolette was entitled "Attachment #3: Binding Arbitration Agreement" (hereinafter "Arbitration

---

[6] Unless otherwise noted, all events described in the Facts section took place in 2020.

Agreement" or "Agreement"). This document contained the following relevant provisions:

> Cadia Healthcare Ranaissance ("Facility") and ALBERT SKINNER ("Resident" (hereinafter, collectively, "Resident") understand and agree that ANY, DISPUTE, DISAGREEMENT, CONTROVERSY, DEMAND, OR CLAIM, INCLUDING, BUT NOT LIMITED TO, LEGAL CLAIMS arising between them regarding any service or health care provided to Resident by Facility, even if such dispute arises after the Resident's stay at the Facility has ended, shall be submitted to **BINDING ARBIRATION** and **EXCLUSIVELY RESOLVED BY ARBITRATION**, except as otherwise set forth below. This Agreement does not apply to (a) collection actions instituted by the Facility, (b) Resident's due process rights before state or federal regulatory or administrative agencies.
>
> **THE PARTIES UDERSTAND AND AGREE THAT BY SIGNING THIS ARBITRATION AGREEMENT, THEY ARE GIVING UP AND WAIVING THEIR STATUORY AND CONSTITUTIONAL RIGHTS TO HAVE ANY CLAIM, INCLUDING MALPRACTICE AND WRONGFUL DEATH CLAIMS, DECIDED IN A COURT OF LAW BEFORE A JUDGE AND JURY.**
>
> **The parties acknowledge that this Agreement binds the Facility, the Facility's Agents, the Facility's Employees, the Resident, the Resident's legally authorized or appointed representative (including without limitation a Guardian, Attorney in Fact, or holder of Power of Attorney), the Resident's spouse, children, and heirs (once determined), the Resident's successors and assigns, and all persons whose claim(s) derives through or on behalf of the Resident.**

Charolette does not dispute that she signed the Arbitration Agreement.

Charolette contends, however, that she only signed the Agreement in her capacity

5

as her husband's legal representative and did not sign the agreement in her individual or personal capacity. Charolette had no intention of signing the agreement in her own capacity, nor was this ever discussed. Judith and Bruce never signed the Arbitration Agreement and did not know of its existence until after the lawsuit was filed.

## ANALYSIS

In determining whether a claim is "properly committed to arbitration" for purposes of ascertaining subject matter jurisdiction, this Court engages in a two-part analysis. The Court must determine:

1.      Whether a valid binding arbitration agreement exists; and

2.      Whether the scope of the agreement covers all of the parties claims.

A party seeking to enforce an arbitration agreement has the initial burden of establishing the existence of a valid agreement to arbitrate.[7] In determining whether an agreement to arbitrate exists, ordinary state-law contract principles apply.[8] Under Delaware law, contract formation requires mutual assent, meaning a complete meeting of the minds of the parties.[9] Whether the parties mutually assented should be determined objectively, based on overt manifestations of assent

---

[7] *First Options of Chicago, Inc. v. Kaplan et al.*, 514 US 938 (1995).
[8] *Id.*
[9] *United Health Alliance, LLC v. United Medical, LLC*, 2013 WL 6383026 (Del. Ch., 2013).

rather than subjective intent.[10] No agreement to arbitrate exists unless there is a clear expression of such an intent.[11, 12]

Applying the principles described above, it is clear that the parties intended any claim belonging to Albert to be subject to binding arbitration. Charolette had Albert's power of attorney. That power of attorney specifically provided that Charolette granted her the authority "to arbitrate any claim in which I [Albert] may be in any manner interested and, for that purpose, to enter into agreements to arbitrate, and either through counsel or otherwise, to carry on such arbitration and perform or enforce any award entered therein." The agreement signed by Charolette in her capacity as Albert's power of attorney was a valid binding arbitration agreement. The scope of that agreement covered all of Albert's claims. Therefore, the survivor claims of Albert are subject to binding arbitration.

I now turn to the wrongful death claims of Charolette, Judith and Bruce. These wrongful death claims are brought under Delaware's Wrongful Death Statute, 10 *Del. C.* §3724. The Wrongful Death Statute provides a separate cause of action for the decedent's spouse, parent, child, and siblings in some cases.[13] According to the parties, whether the wrongful death cause of action is defined as

---

[10] *Id.* at 6.
[11] *Id.*
[12] *Tekman & Co. v. Southern Builders, Inc.,* 2005 WL 1249035 (Del. Super., 2005); *Frank J. Behm v, Am. In't Grp. Inc.,* 2013 WL 3981663 (Del. Super., 2013); *Dennis and Marlene Zeleny v. Thompson Homes at Centerville Inc.,* 2006 WL 2382829 (Del. Super., 2006).
[13] 10 *Del. C.* §3724; *Saunders v Hill, 202 A.2d 807 (Del. 1964); Luff v Hawkins, 551 A.2d 437(Del. Super. 1988)*

a direct claim belonging to the Plaintiffs as individuals or a derivative claim belonging to Albert's estate determines whether the wrongful death claims are subject to binding arbitration. According to the Plaintiffs, the wrongful death claims are not derivative of the survivor action but are separate and distinct causes of action that simply flow from the same underlying tort. In the Plaintiffs' view, the actions are independent of each other and the wrongful death claims are not covered by the scope of the decedent's agreement to arbitrate. Defendant maintains that a wrongful death claim is derivative of and defined by the decedent's rights. According to the defendant, if it is defined by the decedent's rights then the wrongful death claims are subject to the same arbitration requirements as the survivor action. The parties have directed the Court to several cases that each argue supports their respective positions. I turn first to the plaintiffs' support, which focuses on three Delaware cases and a decision from Pennsylvania.

In *Cynthia Parlin, et al. v. Dynocorp In'l Inc., et.al.,* 2009 WL 3636756 (Del. Super. 2009) this Court considered whether a wife's wrongful death claim was released by her husband signing a release of his rights against his employer prior to his death. The Court held that although the wife's wrongful death claim was derivative in the sense that her claim derived from the tortious conduct leading to her husband's death, her husband could not unilaterally release her wrongful

death claim because it was a cause of action that she held separate and distinct from her husband.

In *Margaret Spadaro, et al. v. Abex Corporation, et al.,* the decedent's wife and two adult sons filed a wrongful death action against the decedent's employer. Before his death, the decedent and his wife signed a release on their behalf and on behalf of their "heirs, executors, administrators, successor and assigned" that waived all claims against the defendants. The Court dismissed the wife's claim because she signed the release, but the sons' claims survived on the basis that "since [the sons] had the power to contract for themselves, their parents did not have the power to contract for them."[14] The Court explained: "In Delaware, a wrongful death action is maintained for the benefit of the loved ones or the decedent and not for the benefit of the estate. Therefore, although a wrongful death claim is a derivative claim, this does not mean that a release of the underlying claim automatically releases the tortfeasor from wrongful death and loss of consortium claims."[15]

*Jones v. 810 Broom Street Operations LLC* involved a complaint filed by the plaintiff against a nursing home facility asserting both a wrongful death claim and a survival claim. The nursing home moved to compel arbitration, or, in the alternative, to dismiss for lack of subject matter jurisdiction based on the existence

---

[14] *Margaret Spadaro v. Abex Corporation, et. al.,* 1993 WL 603378, at *1 (Del. Super. 1993).
[15] *Id.*

of an arbitration agreement. The plaintiff opposed the motion and submitted an affidavit averring he only signed the agreement on behalf of his mother as her power of attorney, and not in his personal capacity. The Court denied the motion. According to Plaintiffs, underlying the *Jones* decision is the notion that an Arbitration Agreement signed only by a decedent does not bind independent wrongful death claims that others may have as a result of the decedent's death.

Finally, plaintiff points the Court to the Pennsylvania decision in *Michael V. Pisano, Individually and as Administrator of the Estate of Vincent F. Pisano, Deceased v. Extendicare Homes, Inc., Operating under the Fictitious Name Belair Health and Rehabilitation Center.*[16] In *Pisano,* the court held that a nursing home arbitration agreement did not bind separate and non-derivative claims under the Pennsylvania Wrongful Death act. In reaching this conclusion the court stated "a wrongful death action no longer is derivative of the decedent's claim …the right of action belongs to the statutory claimants rather than the decedent."[17] The court noted that a "derivative action" in tort law refers only to the "injury from which the claimant derives a cause of action."[18] While both actions arise out of the same tortious conduct, the actual injury to the wrongful death claimant is the decedent's death. Thus, the court concluded, the wrongful death action is derivative of

---

[16] 77 A.3d 651 (Pa. Super. 2013).
[17] *Id.,* at 656.
[18] *Id.,* at 659.

decedent's injuries but not derivative of the decedent's death and the arbitration agreement was not binding on the wrongful death beneficiaries.

Defendant points to its own set of cases in support of its argument that the wrongful death claim is derivative of the survivor action and as such the binding arbitration agreement applies to the wrongful death claimants. In *Renaye Jones v. Deborah L. Elliott*[19] the issue before the Court was whether a spouse's loss of consortium claim was extinguished where the underlying claim of the injured spouse had been released. In *Jones,* the Court concluded that the loss of consortium claim was not released. According to the Defendant, this case stands for the proposition that because the liability determination is the same in both the survivor action and the wrongful death action, Delaware law requires that the survival and wrong death claims be adjudicated in the same venue and Albert's election of binding arbitration binds his wife and children.

Defendants next point to the case of *Susan A. Drake, Individually, and as next friend of Melanie Drake and Danielle Drake, and as Administratrix of the Estate of Robert W. Drake v. St. Francis Hospital, a corporation of the State of Delaware, and Ka-Khy-Tze, M.D.*[20] In *Drake,* the plaintiff brought a cause of action for wrongful death after the decedent's underlying claims had become time barred. The Delaware Supreme Court held that the Wrongful Death Act "imposed

---

[19] 551 A.2d 62 (Del. 1988)
[20] 560 A.2d 1059 (Del. 1989).

11

a condition precedent to the accrual of a wrongful death of action" in that it requires that the decedent would have had an "ability to maintain an action and to recover damages if [the] death had not occurred."[21] In the absence of a viable claim for the underlying negligence and survival action on behalf of the decedent, the Delaware Supreme Court held that "no cause of action for the wrongful death ever accrued."[22] According to Defendant, *Drake* supports its position because the wrongful death liability determination is dependent on the survivor liability determination, making the two claims intrinsically linked to each other requiring one forum for resolution – in this case, the one selected by Albert.

Wrongful death claims were not recognized at common law.[23] The existence of wrongful death claims is statutorily based.[24] They represent a separate, distinct, and independent claim from a survivor claim.[25] While proving a wrongful death claim depends on the claimant proving the same underlying negligence as a

---

[21] 560 A.2d 1059, 1062 (Del. 1989).

[22] *Id.,* at 1063.

[23] *Silvia v. Scotten,* 122 A. 513, 514 (Del. 1923)("It is well settled that under the common law no action for damages could be maintained against a person who by his wrongful act, neglect or default may have caused the death of another person."); *Jeffrey Luff, individually and as Administrator of the Estate of Brandon Lee Surguy, and Anastasia Surguy v. Barton Jansen Hawkins, John Edward Voshell, and Jean Elaine Voshell,,* 551 A.2d 437, 438 (Del. Super. 1988)(" In order to provide a new and independent cause of action to fill this void in the common law, the Wrongful Death Act was enacted.")

[24] *Jane A. Coulson and George T. Coulson, Administrator of the Estate of Ethel C. Fox v. Shirks Motor Express Corporation,* 107 A.2d 922, 924 (Del 1954)("The action is not predicated upon the personal injuries sustained by the deceased, but rather upon his wrongful death and the loss occasioned thereby."); *Rosenthalis v. Doctors for Emergency Services,* 2004 WL 692686, at *3 (Del. Super. 2004)("The complaint also contains a survival claim on behalf of the deceased. That is a separate claim. It is not. . . merely derivative or otherwise combined with the wrongful death claim. But that fact does not give rise under the Act or the policy for combining them into a single claim. Therefore, the survival action is a second claim and [the defendant] is obligated to decedent on that claim, too."); *Luff* at 438.

[25] *John Saunders, Administrator of the Estate of Hattie Loat v. James Hill, Administrator of the Estate of Simon Loat,* 202 A.2d 807 (Del. 1964); *Luff* at 438;

survivor claim, the wrongful death claim is nonetheless independent from the survivor action. It is not derivative of the survival claim. Since a wrongful death action is an independent and direct claim by the decedent's relatives, the wrongful death beneficiaries in this case are not bound by the arbitration agreement simply because it was signed on behalf of the decedent.[26]

The question now becomes whether any of the beneficiaries are bound by the arbitration agreement for reasons other than the fact that it was signed on behalf of Albert.

In the instant case, Judith and Bruce never signed the Arbitration Agreement. In fact, they were not even aware of the existence of the Arbitration Agreement until the instant lawsuit was filed. Judith and Bruce did not waive the right to a jury trial with respect to their wrongful death claims and did not authorize their mother or father to do so on their behalf. In other words, Judith and Bruce never assented to the Arbitration Agreement. Therefore, they cannot be bound by it.

---

[26] This decision is consistent with other states that have addressed this question. *Michael V. Pisano, Individually and as Administrator of the Estate of Vincent F. Pisano, Deceased, v. Extendicare Homes, Inc., Operating under the Fictitious Name Belair Health and Rehabilitation Center*, 77 A.3d 651 (Pa. Super. 2013); *Clifford Wayne WOODALL, individually and as representative of the Estate of Henry Wayne Woodall; and Sharon G. Woodall King, v. Avalon Care Center-Federal Way, LLC.*, 231 P.3d 1252, 1257-58 (Wash. 2010); *Lisa Bybee v. Alan Abdulla, M.D., and John Does 1–5*, 189 P.3d 40 (Utah 2008); *Sue Carter, Special Adm'r of the Estate of Joyce Gott, Deceased v. SSC Odin Operating Company, LLC, d/b/a Odin Healthcare Center*, 976 N.E.2d 344 (Ill. 2012); *Dale Lawrence v. Beverly Manor*, 273 S.W.3d 525, 529 (M0. 2009); *Admr. Peters v. Columbus Steel Castings Co.*, 873 N.E. 1258, 1262 (Ohio 2007);

Charolette, on the other hand, did sign the Arbitration Agreement. Charolette has submitted an affidavit in this litigation. In her affidavit, Charolette admits that she signed the Arbitration Agreement. But her affidavit also states that she signed the Arbitration Agreement only as her husband's power of attorney and *not* in her personal capacity. Her affidavit is consistent with the documents, which have been submitted as evidence in this case. Her signature in the Agreement appears over a line labeled "Legal Representative Signature Line." Additionally, following her signature is "POA" meaning "power of attorney." Finally, the Agreement itself provides:

> Cadia Healthcare Renaissance ("Facility") and Albert Skinner (hereinafter, collectively, "Resident") understand and agree that ANY, DISPUTE, DISAGREEMENT, CONTROVERSY, DEMAND, OR CLAIM, INCLUDING, BUT NOT LIMITED TO, LEGAL CLAIMS, arising ***BETWEEN THEM*** … (*emphasis added*).

The phrase "between them" clearly applies to Albert and Cadia, and does not explicitly or implicitly include Charolette in its terms. The plain terms of the arbitration agreement lead to a conclusion that it was an agreement between Cadia and Albert, and that Charolette is not bound by the Agreement in her personal capacity. There is no credible evidence that Charolette waived her constitutional right to a jury trial or that she assented to binding arbitration on her wrongful death claim. In fact, the evidence presented leads to the opposite conclusion. Therefore,

Charolette's wrongful death claim is not covered by the binding arbitration agreement.

Defendant complains that a ruling in Plaintiffs' favor could result in two different proceedings and possibly inconsistent results, and therefore arbitration is mandated. While defendant is correct that Delaware generally favors arbitration[27] it is equally clear that arbitration will not be imposed on parties who were not parties to the agreement.[28] More importantly, Defendant's position infringes on Plaintiffs' constitutional rights. The Seventh Amendment to the United States Constitution guarantees the right to a civil jury trial in a case like the present one.[29] The Delaware Constitution also recognizes the right to a civil jury trial.[30] While the right to a jury trial can be waived, the waiver must be exercised by the person holding the right or by a person who has been granted the express authority to waive that right.[31] This Court will not force arbitration over an individual's constitutional right to a civil jury trial where that right has not been waived. No such waiver has occurred in this case.

---

[27] *SBC Interactive Inc v. Corporate Media Partners, Ameritech Media Ventures, Inc., Bellsouth Interactive Media Ventures, Inc., GTE Media Ventures Incorporated, Disney Media Ventures Inc., and SNET Personal Vision, Inc.,* 714 A2d 758, 761 (Del. 1998); *Dennis and Marlene Zeleny v Thompson Homes at Centerville, Inc. and Thompson Homes, Inc.,* 2006 WL 2382829 (Del. Super. 2006).

[28] *Vituli v. Carrols Corporation, et al.,* 2013 WL 2423091 (Del. Super., 2013)

[29] U.S. Const. Am. VII.

[30] See Article IV, Section 20 and Article I, Section 4 of the Delaware Constitution.

[31] *Cynthia Parlin, Individually, and in her Capacities as Surviving Spouse of Samuel Parlin, And As Executrix of the Estate of Samuel Parlin, Deceased, et al. v.* Dyncorp International, Incorporated, a Delaware Corporation, Parent of the co-defendant Dyncorp entities, formerly known as DI Acquisition Corporation; Dyncorp International LLC, a Delaware Limited Liability Corporation; and Doe Entities 1-10., 2009 WL 3636756 (Del. Super., 2009); *Jones, et al. v. 810 Broom Street Operations LLC,* 2014 WL 1347746 (Del. Super. 2014). *CIT Communications Finance Corp. v. Level 3 Communications, LLC,* 2008 WL 2586694, at *5.

The remaining question before this Court is whether the Wrongful Death Claims should be stayed pending resolution of the survivor action that is subject to binding arbitration. Defendants claim that the Federal Arbitration Act ("FAA"), 9 U.S.C. §3 requires the Court to stay the entire action if only a single claim is subject to arbitration.[32] Defendants' claim is incorrect.

In *Mendez v. Puerto Rican Intern., Co., Inc.*[33] the Third Circuit had an opportunity to address this exact stay issue. In *Mendez*, forty-nine individual plaintiffs brought an employment discrimination action against their employer. Only eight plaintiffs had executed arbitration agreements, and the other forty-one plaintiffs had not. The issue before the Third Circuit was the same as the issue implicated here: whether a defendant who is entitled to arbitrate an issue with one party can insist on a stay of proceedings with other parties who are not committed to arbitrate. The Third Circuit refused to sanction a stay under these circumstances, finding that a material burden on a party's right to litigate their claims may not be based upon an agreement that the party did not sign.

The *Mendez* Court wrote:

> While [a stay pending arbitration for the parties who did not assent to an arbitration agreement] would postpone rather than

[32] "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which the suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C §3
[33] 553 F.3d 709 (3rd Cir. 2009),

eliminate a party's right to litigate it's claim against another, it would nevertheless defer that right for the duration of a proceeding over which the constrained party has no control and would deprive the Court of any discretion to consider the impact of that delay on that party. We find no persuasive evidence in the FAA for sanctioning such a burden. *Mendez v. Puerto Rican Intern., Co., Inc.,* 553 F.3d 709, 711-712.

The reasoning in *Mendez* is on point in this case and this Court accepts this well-reasoned approach. Therefore, this Court denies the defendant's request to stay this action pending the outcome of the arbitration proceeding for the survival action.

Plaintiffs suggest that it would be appropriate to sever the survivor action and the wrongful death actions, and stay the arbitration proceeding involving the survival action until the resolution of the wrongful death claims. As explained above, this Court has no jurisdiction over the survivor action. As such, the Court declines Plaintiffs' invitation to address the procedure and timing of the survivor action.

For the reasons stated above, Defendants' Motion to Dismiss is **GRANTED** as to the survivor action and **DENIED** as to the wrongful death claims. Defendants' Motion to Stay the wrongful death actions is **DENIED**.

**IT IS SO ORDERED**.

_____
Francis J. Jones, Judge

cc:    File&ServeXpress

17