**Revised, January 11, 2001**

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

————————————

No. 00-30015

————————————

ALBERT ADAMS; ET AL,

Plaintiffs,

versus

GEORGIA GULF CORP,

Defendants.

————————————————————————————————————————

JERRY A. OLDHAM; ET AL,

Plaintiffs,

JERRY A. OLDHAM;

Plaintiff-Appellant,

versus

LOUISIANA INTERSTATE GAS CO, LLC; ETAL,

Defendants,

LOUISIANA INTRASTATE GAS CO LLC; LOUISIANA LIG
LIQUIDS COMPANY LLC; INTRASTATE GAS CORPORATION;

AMOCO PRODUCTION COMPANY; AMOCO PIPELINE
COMPANY; AMOCO ENERGY TRADING CORPORATION;
EQUITABLE RESOURCES, INC; ASSOCIATED ELECTRIC &
GAS INSURANCE SERVICES, LTD.

Defendants-Appellants.

Appeal from the United States District Court
For the Middle District of Louisiana, Baton Rouge

January 11, 2001

Before EMILIO M. GARZA, STEWART, and PARKER, Circuit Judges.

PER CURIAM:

Jerry Oldham, plaintiff-appellant appeals the denial of a motion to stay proceedings pending

arbitration. Because we find that we lack jurisdiction, we dismiss the appeal.

The underlying action arose out of an alleged chemical leak at the Georgia Gulf facility in

Plaquemine, Louisiana. Plaintiffs brought suit seeking damages for injuries they allegedly suffered

as a result of the leak. They assert that Amoco Energy Trading Corp. and/or Amoco Production Co.

("Amoco"), defendants, sold natural gas to Georgia Gulf that contained foam chloride, sulfur, amines

and/or other reactive forms of nitrogen. The Louisiana Intrastate Gas Co., LIG Liquids Co.,[1]  also

defendants, through their contract with Amoco, shipped the allegedly contaminated natural gas via

pipeline to Georgia Gulf. The gas was then used by Georgia Gulf in its manufacturing process, which

the plaintiffs claim resulted in a chemical reaction, their subsequent exposure, and their injuries. At

the time of the incident, Associated Electric & Gas Insurance Services, Ltd. ("AEGIS") insured the

---

[1]Louisiana Interstate Gas Co. and LIG Liquids Co. are hereinafter referred to as "LIG."

defendant LIG. AEGIS is a Bermuda corporation with its principal place of business in Bermuda.

Plaintiffs filed suit in Louisiana state court. AEGIS was then named as a defendant under the Louisiana Direct Action Statute. *See* La. R.S. 22:655 (granting claimant in personal injury action right to directly sue the insurer of the alleged tortfeasor). AEGIS removed the entire action to federal district court pursuant to the Convention on Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. § 201, et seq. ("the Convention Act").[2] AEGIS grounded its removal on the existence of an arbitrable dispute over coverage between it, a foreign insurer, and LIG, its insured. The plaintiffs moved to remand the case back to state court. The district court denied the motion to remand because AEGIS articulated an arbitrable dispute and the litigation related to the dispute within the meaning of the Convention Act.

After the denial of the motion to remand, Oldham[3] moved to stay proceedings pending the completion of arbitration under the Federal Arbitration Act's ("FAA") mandatory stay provision, 9 U.S.C. § 3. They hoped that once the arbitration proceedings concluded the case would be remanded back to state court. The magistrate denied the motion to stay. She found that because Oldham was not a party to the arbitration agreement, he was not entitled to a mandatory stay. She further declined to grant Oldham a discretionary stay because it would provide no benefits to the parties to the arbitration agreement and Oldham's desire to return to state court was insufficient to justify such a stay. Oldham appealed this ruling to the district court. The district court affirmed the denial of the

---

[2]The Convention Act incorporates by reference the provisions of the Federal Arbitration Act, 9 U.S.C. § 1, et seq. *See* 9 U.S.C. § 208.

[3]"Oldham" hereinafter refers to the Oldham plaintiffs generally.

FAA stay on the same grounds as the magistrate. The district court also found that the magistrate had not abused her discretion in her refusal to grant the stay. Oldham appeals the district court's denial of the motion to stay proceedings pending arbitration.

We must first decide whether we have jurisdiction to hear Oldham's interlocutory appeal of the denial of the stay. Our jurisdiction is limited to those appeals that Congress has authorized us to hear. *See Cason v. Owen*, 578 F.2d 572, 573 (5th Cir. 1978); *Huckeby v. Frozen Food Express*, 555 F.2d 542, 545 (5th Cir. 1977).

Appellants contend that we have jurisdiction to hear their appeal pursuant to the FAA. The FAA expressly provides for the interlocutory appeal of district court denial of stays obtainable under the FAA's mandatory stay provision. *See* 9 U.S.C. § 16(a)(1) (providing for the appeal of a denial of a mandatory stay); 9 U.S.C. § 3 (providing parties to arbitration with a mandatory stay upon application). Through Section 16, Congress intended to promote arbitration by "permitting interlocutory appeals of orders favoring litigation over arbitration and precluding review of interlocutory orders that favor arbitration." *Forsythe Int'l, S.A. v. Gibbs Oil Co.*, 915 F.2d 1017, 1020 (5th Cir. 1990); *see also* David D. Siegal, Practice Commentary, Appeals from Arbitrability Determinations, 9 U.S.C. § 16 (West 1999) ("The statute ... allows an immediate appeal only from decisions against arbitration. It bars an immediate appeal when the decision is in favor of arbitration, thus letting the arbitration go forward unobstructed.").

In order to invoke jurisdiction under this section, however, the mandatory provision must apply. Generally, this section applies only to parties to the arbitration agreement. *See Zimmerman v. Int'l Co. & Consulting, Inc.*, 107 F.3d 344, 346 (5th Cir. 1997) (finding that "the mandatory stay provision of the FAA does not apply to those who are not contractually bound by the arbitration

agreement"); *In the Matter of Talbott Big Foot, Inc.*, 887 F.2d 611, 614 (5th Cir. 1989) (holding that the mandatory stay provision does not apply to nonsignatories to the arbitration agreement); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 n.23 103 S.Ct. 927, 939 n.23, 74 L.Ed.2d 765 (1983) (noting that the decision to stay proceedings with regard to nonparties to the arbitration "is one left to the district court ... as a matter of discretion," rather than required by the FAA). The denial of the benefit of the mandatory stay provision to nonsignatories has been grounded in the recognition that the nonsignatory's litigation with an arbitrating party cannot be referred to arbitration. *See Nederlandse Ertstankersmaatschappij, N.V. v. Isbrandtsen Co.*, 339 F.2d 440, 441 (2d Cir. 1964) (finding that the "granting of the stay cannot be justified under the terms of the Arbitration Act. Defendants are not parties to the arbitration agreement. The issues of the present action are not referable to arbitration between the parties.")

The clarity of this rule denying the applicability of the mandatory stay provision to non-parties has been muddied by our two most recent cases addressing the applicability of § 3 to nonsignatories. In *Harvey v. Joyce*, 199 F.3d 790 (5th Cir. 2000) and *Subway Equip. Leasing Corp. v. Forte*, 169 F.3d 324 (5th Cir. 1999), we applied the stay provision to non-parties because the issues presented in the nonparty-party litigation if litigated would have rendered the arbitration redundant and thwarted the federal policy favoring arbitration. *See* 199 F.3d at 796 (holding that a stay must include issues of litigation brought against nonsignatory because allowing the litigation to go forward would render the arbitration "redundant and meaningless"); 169 F.3d at 329 (holding that a stay must be granted in order to prevent harm to the signatories rights to arbitrate). In *Harvey* and *Subway*, however, we were confronted with exceptional circumstances. In *Harvey*, the parties to the arbitration agreement were all shareholders in a company, CTC, the non-party to the agreement. Joyce, one of the parties

to the agreement, had been named along with CTC as a defendant. The allegations of the lawsuit against CTC were based upon actions taken by Joyce on behalf of CTC. *See id.*, at 795. As a result, we found that allowing litigation to proceed could have "a critical impact in the Joyce arbitration." *Id.* at 795. Similarly, in *Subway*, we found that because the issues to be litigated by the non-parties were identical to the issues to be arbitrated by the parties allowing the litigation to proceed would harm the parties' rights to arbitrate. *Id.* at 329. Because of these exceptional circumstances, we diverged from our general rule requiring party status for the mandatory stay provision to apply, thereby creating tension in our case law.

Relying on *Harvey*, Oldham urges us to find that, although he is a nonsignatory, his "stake in the outcome" of the arbitration is sufficient to render § 3 applicable to him. The circumstances which arose in both *Harvey* and *Subway* impaired the signatories' rights and obstructed the federal policy favoring arbitration. As we stated in *Harvey*: "we fail to see how litigation could proceed as to CTC without adversely affecting *Joyce*'s right to arbitrate." *Id.* at 796. Our concern there was not the impact on CTC but the right of the party to the arbitration to arbitrate meaningfully. Oldham does not assert that any harm will come to the parties holding the rights to arbitrate nor does he claim that forcing him to litigate his claims would impede the federal policy of arbitration. Instead, he merely alleges that being forced to litigate in federal court impairs his chances of success in the lawsuit. The forum selection concerns of a non-party are not remotely commensurate to the impediment to the federal policy favoring arbitration created by redundant arbitration or potential impairment of the signatories' rights to arbitrate. In short, we find that the litigation before us now does not present the exceptional circumstances that were present in *Harvey* or *Subway*.

The Oldham litigation is instead akin to the litigation before us in *Zimmerman*. There we

found that an insurer sued under the Louisiana Direct Action Statute could not use the mandatory stay provision to stay the litigation brought by the plaintiffs because the plaintiffs were not parties to the arbitration agreement, making the issues presented not referable to arbitration. *See Zimmerman,* 107 F.3d at 345. The arbitration concerned a coverage dispute between insurer and insured, just as is present here. *See id.* Likewise, whatever liability the insurer and insured will be found to have to plaintiffs at trial will not render the arbitration duplicative as it will not resolve the coverage dispute between AEGIS and LIG. Oldham's status as a non-party to the arbitration agreement is not in dispute. Therefore, we find that § 3 does not apply to Oldham. Since § 3 does not apply, § 16 cannot provide us with jurisdiction to hear his appeal.

Because Oldham's motion for a stay does not fall under the auspices of the FAA, we treat it as the denial of a discretionary stay. *See In re Hornbeck*, 981 F.2d 752, 755 (5th Cir. 1993) ("it will lie within the district court's discretion to stay the claims between the nonarbitrating parties pending outcome of the arbitration simply as a means of controlling its docket."). We now consider whether we have jurisdiction under 28 U.S.C. § 1291 and 28 U.S.C. § 1292(a)(1).

We find that we lack jurisdiction under § 1291.[4] A denial of a discretionary stay is not a final decision under the final judgment rule. The Supreme Court "long has stated that as a general rule a district court's decision is appealable under [1291] only when the decision ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 275, 108 S.Ct. 1133, 1138, 99 L.Ed.2d 296 (1988) quoting *Catlin v. United States*, 324 U.S. 229, 233, 65 S.ct. 631, 633, 89 L.Ed. 911 (1945); *see also*

---

[4]28 U.S.C. § 1291 provides in relevant part: "The courts of appeals ... shall have jurisdiction of appeals from all final decisions of the district courts of the United States."

Edith H. Jones, *Arbitration Orders–Coming Out of the Serbonian Bog*, 31 South Tex. L. Rev. 361, 372 (1990) (noting that a § 3 order "denying a motion to stay proceedings pending arbitration should not be appealable under Section 1291 because the order is not final. The order does not effectively end the litigation on the merits"). Furthermore, as we have previously stated, orders denying stays "are not final judgments under § 1291 because the district court retains jurisdiction and contemplates further action." *Jolley v. Paine Webber Jackson & Curtis, Inc.*, 864 F.2d 402, 405 (5th Cir. 1989). Thus, the district court's denial of Oldham motion to stay cannot be appealed to this court under § 1291.

We also find that we lack jurisdiction under § 1292(a)(1).[5] In finding that a denial of a motion not to stay proceedings pursuant to the Colorado River doctrine was not appealable under 1292(a)(1), The *Gulfstream* Court found that an "order by a federal court that relates only to the conduct or progress of litigation before that court ordinarily is not considered an injunction and therefore is not appealable under 28 U.S.C. § 1292(a)(1)." 485 U.S. at 279. Following *Gulfstream*, we applied the same rationale to motions to stay proceedings pending arbitration and held that an order denying a stay pending arbitration is not appealable under § 1292(a)(1). *See Rauscher Pierce Refsnes, Inc. v. Birenbaum*, 860 F.2d 169 (5th Cir. 1988). Therefore, we cannot assert jurisdiction on the alternate grounds of § 1291(a)(1).

While the movants-appellees addressed the issue of whether the appeal should be treated as a writ of mandamus, the appellant has not sought a writ of mandamus. Since the appellant has not asked for this extraordinary remedy, we do not address it and we find that we have no jurisdiction

---

[5]28 U.S.C. § 1291(a)(1) provides the court of appeals with jurisdiction over appeals from "interlocutory orders of the district courts ... granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions."

over the appeal.

For the foregoing reasons, we DISMISS the appeal.