Opinion issued June 8, 2009
















In The
Court of Appeals
For The
First District of Texas
 ____________________

NO. 01-09-00174-CV

 ____________________

IN RE DEVON ENERGY CORPORATION, DEVON ENERGY
INTERNATIONAL, LTD., AND TEXNEFT, INC., Relators









Original Proceeding on Petition for Writ of Mandamus












O P I N I O N




          By a petition for writ of mandamus, Devon Energy Corporation, Devon Energy
International, Ltd., and Texneft, Inc. (collectively, the “Devon defendants”) challenge
the trial court’s denial of their motion to stay litigation. In two issues, the Devon
defendants contend that litigation in the underlying suit must be abated pending
resolution of parallel arbitration involving similar issues and that they have no
adequate remedy by appeal. We conditionally grant mandamus relief. 
BACKGROUND

          In 1989, real parties in interest, Robert Ferris and Donald Ellison, negotiated
with the Oil Ministry of the former U.S.S.R. for the formation of a Russian joint
venture (known as ZAO Tatex and referred to herein as “Tatex”) to be funded by
investors recruited by Ferris and Ellison. Ferris and Ellison recruited investors
Global Natural Resources, Inc. and Global Natural Resources Corporation of Nevada,
the predecessors-in-interest of the Devon defendants. Defendant Texneft, Inc. was
formed as the United States partner in the Tatex joint venture. 
          Two contracts govern the parties’ relationship in the Russian joint venture. 
The first contract, dated May 15, 1990, between the Devon defendants, Ferris and
Ellison, is entitled “Agreement Among U.S. Parties” (the “Original Agreement”) and
provides that: (1) Devon Energy Corporation and Devon Energy International, Ltd.
(collectively, “Devon”) would supply Texneft with the required capital; (2) Devon
would recoup its capital contributions through net proceeds generated by Texneft; (3)
once Devon fully recouped its contributed capital (referred to herein as “payout”), it
would thereafter own 80% of Texneft while Ellison and Ferris would each receive
vested 10% interests in Texneft. The Original Agreement did not contain an
arbitration clause. 
          In 1994, the parties executed the second contract, titled “Termination
Agreement,” which ended Ellison’s role in the Original Agreement and transferred
his rights regarding his Texneft interest to Devon. Under the Termination
Agreement, Ellison was to receive certain rights derived from the same payout from
which his and Ferris’s rights were activated under the Original Agreement. 
Specifically, upon payout, Ellison was to receive a vested right to 5% of the dividends
that Devon receives from current distributions of Texneft’s net profit, subject to
certain reserves. Both Ferris’s and Ellison’s rights to distributions are based on the
same payout, which is determined by the same receipt and payment of funds by
Devon and its appropriate maintenance of the payout account. Unlike the Original
Agreement, the Termination Agreement contains an arbitration clause, which
provides, in part: 
Governing Law and Arbitration: This Agreement shall be governed
by and construed in accordance with the laws of the State of Texas. All
disputes arising out of or relating to this Agreement or the parties’
relationship shall be resolved by arbitration in Houston, Texas under the
rules of the International Centers for Arbitration (the “ICA”). 
 
          On February 11, 2008, Ferris and Ellison sued the Devon defendants in Texas
state district court over the timing of the payout, contending that the Devon
defendants breached their contract by (1) failing to evidence alleged advances or
payments from Devon to Texneft by issuance of preferred stock or notes of Texneft;
(2) failing to properly account for payments made to Texneft; (3) failing to properly
account for amounts paid by Texneft; (4) failing to contribute to the capital of Texneft
all notes, preferred stock, or other securities of Texneft senior to Texneft’s common
stock after receiving a sum equal to the Devon defendants’ entire investment in
Texneft; (5) failing to make current distribution of Texneft’s profits; and (6) failing
to properly account for, and provide Ferris with, the value paid for Texneft in
mergers. In their original petition, Ferris and Ellison also requested a declaration that
payout “has been reached.” 
          The Devon defendants removed the suit to federal court pursuant to the
Convention on the Recognition and Enforcement of Foreign Arbitral Awards. See
9 U.S.C. § 205 (2006). After removal, Ellison agreed to arbitrate his claims. Before
the federal court, Ferris moved to remand his case back to the state district court. The
Devon defendants then moved to stay Ferris’s federal litigation pending resolution
of Ellison’s arbitration. The federal court remanded Ferris’s claims back to the state
district court, but denied the Devon defendants’ motion to stay for lack of subject
matter jurisdiction. Also, the federal court concluded that it lacked jurisdiction
because Ferris’s claims did not relate to an arbitration agreement falling under the
Convention on the Recognition and Enforcement of Foreign Arbitral Awards. See
9 U.S.C. § 205 (2006). However, the federal court reminded the Devon defendants
that they could “move for a stay of Ferris’s claims in the state court.” 
          After remand, the Devon defendants moved for a stay of Ferris’s litigation in
the trial court pursuant to the Federal Arbitration Act (“FAA”), or, alternatively, the
Texas General Arbitration Act (“TAA”). 9 U.S.C. §§ 1–16 (2006); Tex. Civ. Prac.
& Rem. Code Ann. §§ 171.001–.098 (Vernon 2005). The trial court denied the
motion to stay. 
FAA and TAA
As a threshold matter, we must determine whether the FAA, or the TAA, or
both, govern this suit. The FAA preempts all otherwise applicable state laws,
including the TAA, under the Supremacy Clause of the United States Constitution. 
U.S. Const. art. VI; see Allied-Bruce Terminix Co. v. Dobson, 513 U.S. 265, 272,
115 S. Ct. 834, 838 (1995). The FAA applies to contracts involving interstate
commerce. 9 U.S.C. § 2 (2006). It requires only that interstate commerce be
involved or affected. Allied-Bruce, 513 U.S. at 277–81, 115 S. Ct. at 841–43. If an
arbitration agreement does not specify whether the FAA or the TAA applies, but
states that it is governed by the laws of Texas, both the FAA and the TAA apply
unless the agreement specifically excludes federal law. See In re L & L Kempwood
Assocs., L.P., 9 S.W.3d 125, 127–28 (Tex. 1999) (orig. proceeding). “For the FAA
to preempt the TAA, state law must refuse to enforce an arbitration agreement that
the FAA would enforce, either because (1) the TAA has expressly exempted the
agreement from coverage . . . or (2) the TAA has imposed an enforceability
requirement not found in the FAA.” In re D. Wilson Constr. Co., 196 S.W.3d 774,
780 (Tex. 2006) (orig. proceeding). The TAA does not provide for interlocutory
appeal on a denial of a motion to stay litigation.


 See Home Club, Inc. v. Barlow, 818
S.W.2d 192, 192 (Tex. App.—San Antonio 1991, no writ). If the FAA applies,
mandamus is proper to address a failure to stay litigation. See In re Merrill Lynch
Trust Co., 235 S.W.3d 185, 188 (Tex. 2007) (“[M]andamus relief is appropriate if the
trial court abused its discretion in failing to stay the litigation and compel
arbitration.”); see also Zuffa, LLC v. HDNet MMA 2008 LLC, 262 S.W.3d 446, 449
(Tex. App.—Dallas 2008, no pet.) (“A party seeking relief pursuant to the FAA from
the trial court’s denial of arbitration or a stay of litigation must file a petition for writ
of mandamus.”).
Here, both the FAA and TAA apply because the arbitration agreement does not
specify which governs it but does provide that it is governed by the laws of Texas,
and it does not specifically exclude the FAA. See In re L & L Kempwood Assocs., 9
S.W.3d at 127–28. Additionally, it is undisputed that the contract involves interstate
commerce. Allied-Bruce, 513 U.S. at 277–81, 115 S. Ct. at 841–43. The Devon
defendants moved to stay litigation before the trial court pursuant to the FAA, and,
alternatively, the TAA. Mandamus is the proper means to address a trial court’s
failure to stay litigation. See In re Merrill Lynch, 235 S.W.3d at 188. Stay of Litigation
          The Devon defendants argue that the litigation must be abated pending
resolution of the arbitration because the arbitration is a parallel proceeding involving
similar issues. Ferris argues that the parallel litigation should not be abated because
he was not a signatory to the arbitration agreement and did not wish for the litigation
to be stayed. 
          Section 3 of the FAA provides:
[i]f any suit or proceeding be brought in any of the courts of the United
States upon any issue referable to arbitration under an agreement in
writing for such arbitration, the court in which such suit is pending,
upon being satisfied that the issue involved in such suit or proceeding
is referable to arbitration under such an agreement, shall on application
of one of the parties stay the trial of the action until such arbitration has
been had in accordance with the terms of the agreement, providing the
applicant for the stay is not in default in proceeding with such
arbitration. 
 
9 U.S.C. § 3 (2006). Here, the parties do not dispute the existence of the written
arbitration agreement between Ellison and the Devon defendants, or that Ferris was
not a party to the arbitration agreement. 
          Generally, the mandatory stay applies only to parties to an arbitration
agreement. Adams v. Ga. Gulf Corp., 237 F.3d 538, 540 (5th Cir. 2001) (per curiam). 
However, a non-signatory party’s claims may be subject to the mandatory stay if the
“issues presented in the nonparty-party litigation if litigated would have rendered the
arbitration redundant and thwarted the federal policy favoring arbitration.” Zuffa, 262
S.W.3d at 450 (citing Adams, 237 F.3d at 540); see also In re Merrill Lynch, 235
S.W.3d at 195 (“Thus, when an issue is pending in both arbitration and litigation, the
Federal Arbitration Act generally requires the arbitration to go forward first;
arbitration should be given priority to the extent it is likely to resolve issues material
to [the] lawsuit.”). Courts must focus on preserving the right to meaningful
arbitration rather than addressing potential harm to the rights of a non-signatory. See
Waste Mgmt., Inc. v. Residuos Industriales Multiquim, S.A. de C.V., 372 F.3d 339,
343 (5th Cir. 2004). “Because the focus is the potential effect of the litigation on the
signatory party’s right to a meaningful arbitration, the non-signatory’s status as a
plaintiff or a defendant in the litigation is not dispositive.” Zuffa, 262 S.W.3d at 450
(citing In re Merrill Lynch, 235 S.W.3d at 196). The FAA’s mandatory stay applies
to a non-signatory to an arbitration agreement if (1) the arbitrated and litigated
disputes involve the same operative facts, (2) the claims asserted in the arbitration and
litigation are “inherently inseparable,” and (3) the litigation has a “critical impact” on
the arbitration. Waste Mgmt., 372 F.3d at 343. 
          Although decisions of the federal courts of appeals do not bind Texas courts,
we receive them “with respectful consideration.” Hassan v. Greater Houston Transp.
Co., 237 S.W.3d 727, 731 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (citing
Hayes v. Pin Oak Petroleum, Inc., 798 S.W.2d 668, 672 n. 5 (Tex. App.—Austin
1990, writ denied). Texas state courts interpret federal law independently, though
“we typically seek guidance from among the decisions of the lower federal courts.”
Id. (citing Kiefer v. Continental Airlines, Inc., 882 S.W.2d 496, 502 (Tex.
App.—Houston [1st Dist.] 1994), aff’d, 920 S.W.2d 274 (Tex. 1996); see also Owsley
v. Peyton, 352 F.2d 804, 805 (4th Cir. 1965) (“Though state courts may for policy
reasons follow the decisions of the [federal] Court of Appeals whose circuit includes
their state, . . . they are not obliged to do so.”). State courts have the authority to
render binding decisions based on their interpretation of federal law unless a federal
statute provides for exclusive federal jurisdiction. ASARCO v. Kadish, 490 U.S. 605,
617, 109 S. Ct. 2037, 2045 (1989). 
          Here, Ellison’s arbitration and Ferris’s litigation involve the same operative
facts, and the claims asserted in the arbitration and litigation are “inherently
inseparable.” See Waste Mgmt., 372 F.3d at 343. For the first four years of the
Russian venture, Ferris and Ellison were parties to the Original Agreement. Although
Ellison signed the Termination Agreement, the Termination Agreement tied Ferris’s
rights to the same payout event. In fact, one of Ellison’s claims in the arbitration is
that the Termination Agreement should be rescinded, permitting him to make his
claims under the Original Agreement. Ferris’s litigation and Ellison’s arbitration seek
to establish the same core issue, that is, the time of payout. The claims are based on
the same investment in and the same distributions from the same joint venture. Ferris
and Ellison filed their claims as co-plaintiffs, allege nearly identical breach of
contract claims, and seek one shared set of declarations, including a shared
declaration that payout has been reached. Ellison then asserted these same claims in
arbitration. Moreover, if not stayed, Ferris’s litigation will critically impact the
Devon defendants’ arbitration with Ellison. See id. Specifically, the litigation could
subvert the Devon defendants’ right to a meaningful arbitration with Ellison by
deciding issues subject to the arbitration. See Zuffa, 262 S.W.3d at 451. 
Accordingly, we hold that the litigation between Ferris and the Devon defendants
must be abated pending resolution of the arbitration proceeding between Ellison and
the Devon defendants. 
          Ferris argues that Texas state and federal caselaw unfavorable to his position
is distinguishable because he, unlike the non-signatory in many of the relevant cases,
is opposed to a stay of litigation.


 Indeed, the non-signatory in In re Merrill Lynch
was the movant to stay litigation, as was the non-signatory in Waste Management. 
See In re Merrill Lynch, 235 S.W.3d at 195; see Waste Mgmt., 372 F.3d at 340. To
support his argument, Ferris cites federal cases from the United States Courts of
Appeals of the Third and Seventh Circuits that prohibit application of section three
of the FAA to non-signatories opposed to its application. See Mendez v. Puerto
Rican Int’l Cos., 553 F.3d 709, 711 (3d Cir. 2009); see IDS Life Ins. Co. v.
SunAmerica, Inc., 103 F.3d 524, 529 (7th Cir. 1996). 
          However, a non-signatory’s opposition to a stay of litigation did not persuade
the Dallas Court of Appeals to alter its priority of preserving the integrity of the
arbitration process over the potential harm to a non-signatory’s interests. See Zuffa,
262 S.W.3d at 450–51. In Zuffa, HDNet MMA 2008 (“HDNet”) sought a declaratory
judgment from the trial court regarding the earliest eligibility of a professional
fighter, Randy Couture, to sign a fight contract with HDNet. Id. at 448. At the time,
Couture was signed with Zuffa, LLC (“Zuffa”). Zuffa filed for arbitration with
Couture in Nevada, then moved to stay the litigation in Texas. Id. at 448–49. The
trial court denied the motion to stay, and Zuffa petitioned for a writ of mandamus. 
Id. at 449. Before the appellate court, HDNet argued that a stay of litigation was
discretionary rather than mandatory because it was a “non-signatory plaintiff that
ha[d] not sought arbitration.” Id. at 450. However, citing precedent from the United
States Court of Appeals for the Fifth Circuit, the Dallas Court of Appeals determined
that a signatory’s right to meaningful arbitration should be prioritized over the
potential harm to a non-signatory’s interests. Id. (citing Waste Mgmt., 372 F.3d at
343). 
          Additionally, although In re Merrill Lynch does not involve a non-signatory
opposed to a stay of litigation, the Texas Supreme Court explained that its opinion 
in In re Kellogg Brown & Root illustrates “one of many circumstances in which
litigation must be abated to ensure that an issue two parties have agreed to arbitrate
is not decided instead in collateral litigation.” In re Merrill Lynch, 235 S.W.3d at 196
(citing In re Kellogg Brown & Root, Inc., 166 S.W.3d 732 (Tex. 2005)). As in the
instant case, In re Kellogg Brown & Root involved application of a stay of litigation
against a non-signatory plaintiff. 166 S.W.3d at 736.  
          Our focus concerns the preservation of meaningful arbitration, not the potential
harm to the interests of a nonsignatory. See Waste Mgmt., Inc., 372 F.3d at 343; In
re Merrill Lynch, 235 S.W.3d at 195–96; In re Kellogg Brown & Root, Inc., 166
S.W.3d at 736; Zuffa, 262 S.W.3d at 450. Because Ferris’s litigation could jeopardize
the integrity of the parallel arbitration, we hold that the trial court abused its
discretion in denying the Devon defendants’ motion to stay the litigation. Moreover,
because allowing the litigation to proceed will critically impact the Devon
defendants’ arbitration with Ellison, the Devon defendants do not have an adequate
remedy by appeal. See In re Merrill Lynch, 235 S.W.3d at 195 (“Without such a stay,
arbitration would no longer be the ‘rapid, inexpensive alternative to traditional
litigation’ it was intended to be . . . .”). 
 
 
 
 
 
 
 
 
CONCLUSION
          We conditionally grant the petition for writ of mandamus, direct the trial court
to vacate its order denying the Devon defendants’ motion to stay, and direct the trial
court to enter an order staying Ferris’s litigation pending the outcome of the Devon
defendants’ arbitration with Ellison. The writ will issue only if the trial court fails to
comply. All pending motions are overruled as moot. 
                                                                       Terry Jennings
                                                                        Justice
 
Panel consists of Justices Jennings, Keyes, and Higley.