

# NUMBER 13-12-00538-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

## IN RE EAST RIO HONDO WATER SUPPLY CORPORATION

## On Petition for Writ of Mandamus.

## MEMORANDUM OPINION

## Before Chief Justice Valdez and Justices Garza and Vela
## Memorandum Opinion by Justice Vela[1]

Relator, East Rio Hondo Water Supply Corporation, filed a petition for writ of mandamus in the above cause on August 27, 2012, contending that the trial court erred in denying its motion to compel arbitration against Madison Chemical Industries, Inc. ("Madison"), in granting Madison's motion to designate a responsible third party, and in granting Madison's motion to stay trial pending arbitration. We deny the petition for writ of mandamus.

---

[1] *See* TEX. R. APP. P. 52.8(d) ("When denying relief, the court may hand down an opinion but is not required to do so."); TEX. R. APP. P. 47.4 (distinguishing opinions and memorandum opinions).

# I. BACKGROUND

In 2005, relator, who owned two elevated water towers in South Texas, purchased products from Madison to recoat the interior and exterior surfaces of the towers and hired Diversified Coatings, Inc. ("Diversified") to apply the coatings to the towers. These transactions encompassed two separate contracts: a contract between relator and Madison whereby Madison sold the coating products to relator, and a subsequent contract between relator and Diversified whereby Diversified contracted to apply the products. Relator's contract with Diversified included an arbitration clause, but relator's separate contract with Madison did not.

In 2008, after Hurricane Dolly hit the Rio Grande Valley, significant delamination, or peeling, of the top surface coating on the exterior of both towers occurred. The exterior coating disbonded and delaminated from the base coat and some of the substrate metal began to corrode. Subsequent investigation showed that the interior coating had also failed.

Relator brought suit against both Madison and Diversified in the 444th District Court of Cameron County seeking declaratory judgment, and pleading causes of action for breach of contract, negligence, breach of warranties, deceptive trade practices, and bad faith. In this litigation, relator moved to compel arbitration against Madison by two separate motions. The trial court denied relator's motions to compel arbitration against Madison. Diversified moved to compel arbitration against relator, and the trial court granted Diversified's motion to compel and ordered the litigation between relator and Diversified to be stayed pending the arbitration.

Madison filed a motion for leave to designate Diversified as a responsible third party, and the trial court granted leave for the designation. Madison thereafter filed a motion to stay its litigation with relator pending relator's arbitration with Diversified, and the trial court granted that stay.

By three issues, which we have reorganized and renumbered for ease of review, relator contends that the trial court abused its discretion: (1) in denying relator's motion to compel arbitration against Madison; (2) in granting Madison's motion to stay the trial court proceedings with relator pending the arbitration between relator and Diversified; and (3) in granting Madison's motion to designate Diversified as a responsible third party. The Court requested and received responses to the petition for writ of mandamus from Diversified and Madison, and also received a reply thereto from relator. The parties generally agree that the resolution of this matter is determined by reference to the Federal Arbitration Act ("FAA").

## II. MANDAMUS

To be entitled to the extraordinary relief of a writ of mandamus, the relator must show that the trial court abused its discretion and there is no adequate remedy by appeal. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding). The relator has the burden of establishing both prerequisites to mandamus relief, and this burden is a heavy one. *In re CSX Corp.*, 124 S.W.3d 149, 151 (Tex. 2003) (orig. proceeding). A trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable as to constitute a clear and prejudicial error of law, or if it clearly fails to correctly analyze or apply the law. *In re Cerberus Capital*

*Mgmt.*, LP, 164 S.W.3d 379, 382 (Tex. 2005) (per curiam) (orig. proceeding); *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding).

Under previous law, a party denied the right to arbitrate pursuant to an agreement subject to the FAA did not have an adequate remedy by appeal and was entitled to mandamus relief. *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 642–43 (Tex. 2009). Texas Civil Practice and Remedies Code section 51.016 now permits interlocutory appeals "to the court of appeals from the judgment or interlocutory order of a district court . . . under the same circumstances that an appeal from a federal district court's order or decision would be permitted by 9 U.S.C. Section 16." TEX. CIV. PRAC. & REM CODE ANN. § 51.016 (West Supp. 2011); *CMH Homes v. Perez*, 340 S.W.3d 444, 448–49 (Tex. 2011) (explaining that section 51.016 provides for interlocutory appeals in FAA cases so long as "it would be permitted under the same circumstances in federal court under section 16."). The Legislature added section 51.016 to the civil practice and remedies code in 2009. Act of May 27, 2009, 81st Leg., R.S., ch. 820, §§ 1, 3, 2009 TEX. GEN. LAWS 2061 (codified at TEX. CIV. PRAC. & REM. CODE § 51.016); *see CMH Homes*, 340 S.W.3d at 448. However, this section is applicable only to appeals of an interlocutory order in an action filed on or after September 1, 2009. *See* Act of June 19, 2009, 81st Leg., R.S., ch. 820, § 2, 2009 TEX. GEN. LAWS 2061. This lawsuit was filed prior to that date; therefore, section 51.016 is inapplicable to this case and relator lacks an adequate remedy by appeal. *See In re Labatt Food Serv., L.P.*, 279 S.W.3d at 642–43. We thus proceed to the merits.

### III. WAIVER

In its first issue, relator contends that the trial court erred in refusing to compel arbitration with Madison. As an initial matter, we note that Madison contends that relator waived its right to arbitration because it "has engaged in discovery and even filed a motion for summary judgment" against Madison on August 18, 2011. According to Madison, relator's "substantial invocation of the judicial process has thus waived any right to arbitration it may have possessed." Madison has additionally provided an analysis of the substantive law regarding waiver of arbitration rights, but the foregoing statements encompass the entirety of Madison's arguments on this issue. The record fails to include any of the referenced discovery or the alleged motion for summary judgment.

"[A] party waives an arbitration clause by substantially invoking the judicial process to the other party's detriment or prejudice." *Perry Homes v. Cull*, 258 S.W.3d 580, 589–90 (Tex. 2008). Thus, parties that "conduct full discovery, file motions going to the merits, and seek arbitration only on the eve of trial" waive any contractual right to arbitration. *In re Vesta Ins. Group, Inc.*, 192 S.W.3d 759, 764 (Tex. 2006) (orig. proceeding). Whether arbitration has been waived is a legal question to be determined by the court based on the totality of the circumstances. *In re Fleetwood Homes of Tex., L.P.*, 257 S.W.3d 692, 693–94 (Tex. 2008) (orig. proceeding). In determining whether a party waived the right to arbitrate, courts may consider, among other factors: (1) whether the movant for arbitration was the plaintiff (who chose to file in court) or the defendant (who merely responded), (2) when the movant learned of the arbitration clause and how long the movant delayed before seeking arbitration, (3) the amount of

pretrial activity related to the merits rather than arbitrability or jurisdiction, (4) the amount of discovery conducted and by whom, (5) whether the discovery went to the merits rather than arbitrability or jurisdiction, (6) whether the movant sought judgment on the merits, and (7) what discovery is available in arbitration. *See Perry Homes*, 258 S.W.3d at 590–92; *In re Hawthorne Townhomes, L.P.*, 282 S.W.3d 131, 141 (Tex. App.—Dallas 2009, no pet.). There is a strong presumption against waiver of arbitration. *Perry Homes*, 258 S.W.3d at 590. The burden is on the party opposing arbitration to prove that it has been prejudiced by the other party's substantial invocation of the judicial process. *Id.* at 593–94.

In the instant case, Madison has not fulfilled its burden to show that relator waived its right to arbitration. *See id.* Madison invokes two of the numerous *Perry Homes* factors regarding waiver to support its argument that relator substantially invoked the judicial process. Specifically, Madison asserts that relator waived arbitration by engaging in discovery and filing a motion for summary judgment. However, the record before this Court lacks the motion for summary judgment or any of the alleged discovery, and Madison has not provided further information or argument that would enable us to evaluate those factors in a totality of the circumstances analysis. *In re Fleetwood Homes of Tex., L.P.*, 257 S.W.3d at 693–94. The record fails to indicate the amount of discovery conducted and by whom and whether the discovery went to the merits rather than arbitrability or jurisdiction. *See In re Vesta Ins. Group, Inc.*, 192 S.W.3d at 763; *see also Perry Homes*, 258 S.W.3d at 600. The record further fails to indicate whether relator's motion for summary judgment was sought on the merits. In this regard, we note that whether a party seeks a judicial decision on the

merits of the case may be one factor in determining waiver, but it is not the only factor. *See Perry Homes*, 258 S.W.3d at 590–92.

Madison has shown neither that relator engaged in actions that would constitute a substantial invocation of the judicial process as a matter of law, nor that Madison was prejudiced by relator's actions. *See id.* Accordingly, we reject Madison's assertion that relator has waived its rights to arbitration.

## IV. ARBITRATION

Relator contends that Madison, a nonsignatory to relator's contract with Diversified, is nevertheless bound by the arbitration provision in relator's contract with Diversified. Under the FAA, whether an arbitration agreement binds a nonsignatory is a gateway matter to be determined by courts, rather than arbitrators, unless the parties clearly and unmistakably provide otherwise. *In re Labatt Food Serv., L.P*., 279 S.W.3d at 643.

Under the FAA, state law generally governs whether a litigant agreed to arbitrate, and federal law governs the scope of the arbitration clause, but whether nonsignatories are bound by an arbitration agreement is a distinct issue that may involve either or both of these matters. *Id.* To resolve this issue, we apply "state substantive law and endeavor to keep it consistent with federal law." *Id.*; *see Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630–31 (2009); *Roe v. Ladymon*, 318 S.W.3d 502, 511 (Tex. App.—Dallas 2010, no pet.).

A party seeking to compel arbitration must establish the existence of a valid arbitration agreement and show that the claims asserted fall within the scope of the arbitration agreement. *In re Dillard Dep't Stores, Inc.*, 186 S.W.3d 514, 515 (Tex. 2006)

7

(orig. proceeding). Whether there is an enforceable agreement to arbitrate is a question of law which we review de novo. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003). If the trial court concludes that the parties have made a valid arbitration agreement, the burden then shifts to the party opposing arbitration to raise an affirmative defense to enforcing arbitration. *Id.* If the party seeking to compel arbitration establishes its right to arbitration and the opposing party does not defeat that right, the trial court has no discretion but to compel arbitration. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753–54 (Tex. 2001) (orig. proceeding). Because a presumption exists in favor of arbitration, courts must resolve any doubt about an arbitration agreement's existence or scope in favor of arbitration. *Id.* at 753.

It is undisputed that Madison did not expressly agree to arbitrate with relator. The issue we must resolve is whether Madison is bound to arbitrate as a nonsignatory. According to principles of contract and agency law, arbitration agreements may bind nonsignatories under any of six different theories: (1) incorporation by reference; (2) assumption; (3) agency; (4) alter ego; (5) equitable estoppel; and (6) third party beneficiary. *See In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 739 (Tex. 2005) (orig. proceeding); *Carr v. Main Carr Dev., LLC*, 337 S.W.3d 489, 493–94 (Tex. App.—Dallas 2011, pet. denied). Of these theories, relator asserts Madison must be compelled to arbitrate by estoppel and as a third party beneficiary.

## A. EQUITABLE OR DIRECT BENEFITS ESTOPPEL

Relator contends that Madison's cross-claims against Diversified must be determined by reference to Diversified's contract with relator, which contains the arbitration clause. Relator points out that Madison claims that Diversified breached its

8

contract with relator and that it is owed indemnification based on that breach. Relator further asserts that Madison has designated Diversified as a responsible third party. Relator thus contends that "Madison cannot simultaneously make these claims and seek to avoid the arbitration clause [contained] in the contract from which it seeks such benefit." Relator further alleges that its claims against Madison must be determined by reference to its contract with Diversified. According to relator, "[a]s the claims and defenses of each of the parties are related to the claims and defenses of the other two, there is no matter that can be adjudged and adjudicated without reference to the contract between [relator] and Diversified."

Under the "equitable estoppel" doctrine, when a nonsignatory to a contract that contains an arbitration provision sues on the contract and seeks a direct benefit from the contract, the nonsignatory is estopped to deny enforceability of the arbitration provision of the contract that the signatory seeks to enforce. *See In re U.S. Home Corp.*, 236 S.W.3d 761, 765 (Tex. 2007) (orig. proceeding); *In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185, 191 (Tex. 2007) (orig. proceeding); *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 131–32 (Tex. 2005) (orig. proceeding); *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d at 739; *see also Meyer v. WMCO-GP, LLC*, 211 S.W.3d 302, 307 (Tex. 2006); *In re FirstMerit Bank, N.A.*, 52 S.W.3d at 755. The doctrine also applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory. *See Meyer*, 211 S.W.3d at 306 (citing *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 527 (5th Cir. 2000)); *Trammell v. Galaxy Ranch Sch., L.P. (In re Trammell)*, 246 S.W.3d 815, 821 (Tex. App.—Dallas 2008, no pet.) (combined appeal & orig.

9

proceeding). When each of a signatory's claims against a nonsignatory references or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate. *Meyer*, 211 S.W.3d at 306; *see Grigson*, 210 F.3d at 527. When a party's right to recovery and damages depend on the agreement containing the arbitration provision, the party is relying on the agreement for its claims. *See Meyer*, 211 S.W.3d at 307.

The doctrine does not apply, however, when the claimed benefits are "insubstantial" or "indirect," *In re Weekley Homes*, 180 S.W.3d at 134, or when the claim merely "relates" to the contract. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d at 741. Claims by a nonsignatory that "can stand independently of the underlying contract" should generally not be arbitrated. *Id.* at 739–40. Moreover, arbitration cannot be compelled based solely on substantially interdependent and concerted misconduct. *See In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d at 191; *Trammell,* 246 S.W.3d at 821. Further, equitable estoppel cannot give nonsignatories a greater right to arbitration than the signatories themselves have. *See Meyer*, 211 S.W.3d at 306.

Based on the circumstances presented here, we conclude that estoppel does not bind Madison to the arbitration clause in Diversified's contract with relator because Madison is not seeking a direct benefit from that contract. *See In re Weekley Homes*, 180 S.W.3d at 134. Madison's claims that Diversified is responsible for relator's damages and that Diversified should indemnify Madison are not dependent on the existence of the contract between relator and Diversified. Stated otherwise, Madison could claim that relator's damages were caused by Diversified even if relator and Diversified had not entered into a contract. At best, Madison's claims merely relate to

10

that contract. *See In re Kellogg Brown & Root, Inc.*, 166 S.W.3d at 741. We conclude that relator has not shown that Madison is obligated to arbitrate its claims against it under the doctrine of direct benefits estoppel.

## B. THIRD PARTY BENEFICIARY

A third party beneficiary to a contract can compel or be compelled to arbitrate under an arbitration provision in a contract. *See In re Next Fin. Group Inc.*, 271 S.W.3d 263, 267 (Tex. 2008) (orig. proceeding) (holding employer third party beneficiary could compel arbitration). Generally, however, "there is a presumption against conferring third party beneficiary status on noncontracting parties." *S. Tex. Water Auth. v. Lomas*, 223 S.W.3d 304, 306 (Tex. 2007) (citing *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 652 (Tex. 1999)). In determining whether a party qualifies as a third party beneficiary with the ability either to enforce or challenge a contract that was made between other parties, "it is the contracting parties' intent that controls." *Id.* An intent to confer a direct benefit upon a third party must be clearly and fully spelled out or enforcement must be denied. *Id.*; *Carr*, 337 S.W.3d at 494–95. Thus, a contract may be enforced against a third party "when the contracting parties themselves intend to secure some benefit for the third party and entered into the contract directly for the third party's benefit." *S. Tex. Water Auth.*, 223 S.W.3d at 306. "A court will not create a third party beneficiary contract by implication." *Stine v. Stewart*, 80 S.W.3d 586, 589 (Tex. 2002).

Relator contends that its contract with Diversified contains evidence of both parties' intent to make Madison a third party beneficiary of the contract. Relator's argument is as follows:

11

> At the time [relator's] contract was executed with Diversified, the contract documents specifically reference Madison for training, certification, and technical support on correct coating application. . . . Madison's input was even used to draft the comprehensive contract specifications. Moreover, the documents specifically listed the Madison coating products that Diversified was required to purchase and apply to the elevated storage tanks. Finally, [relator] and Diversified, the contracting parties, intended that Madison would derive a direct, economic benefit from these provisions in its contract. Therefore, [relator's] and Diversified's intent to make Madison a third party beneficiary is clearly written and evidenced in the contract.

Relator does not further specify which contractual provisions indicated its intent to make Madison a third party beneficiary of relator's contract with Diversified.

Relator's contract with Diversified contains no provisions which clearly and fully spell out any intent to confer a direct benefit on Madison. *See S. Tex. Water Auth.*, 223 S.W.3d at 306. The contract identifies Madison as the vendor of the coatings to be applied to the towers, but does not define Madison as a party to the agreement or as a beneficiary under the contract, nor does it otherwise express that Madison has any right to enforce it. Relator has presented no evidence showing that the agreement is intended to confer upon Madison the right to sue to enforce the contract. Thus, the contract language does not overcome the presumption against considering Madison as a third party beneficiary of the contract. *See In re Bayer Materialscience, LLC*, 265 S.W.3d 452, 456 (Tex. App.—Houston [1st Dist.] 2007, orig. proceeding). We conclude that Madison is not a third party beneficiary of the contract with Diversified, and thus is not subject to its arbitration clause.

Because Madison was not compelled to arbitrate based on estoppel or as a third party beneficiary, the trial court did not err in refusing to compel arbitration against Madison. We overrule relator's first issue.

12

In its second issue, relator contends that the trial court erred in granting Madison's motion to stay the trial court proceedings pending the arbitration between relator and Diversified. Relator contends that a nonsignatory to the arbitration agreement, such as Madison in the case at bar, cannot request and receive a stay of litigation parallel to the arbitration proceeding under *Arthur Anderson L.L.P. v. Carlisle*, 566 U.S. 624 (2009) and *In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185 (Tex. 2007).

The FAA requires courts to stay the litigation of issues that are subject to arbitration. *See* 9 U.S.C.A. § 3 (2009); *In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d at 195. Section 3 of the FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C.A. § 3. The Texas Supreme Court has held that "when an issue is pending in both arbitration and litigation . . . arbitration 'should be given priority to the extent it is likely to resolve issues material to the lawsuit.'" *In re Merrill Lynch & Co., Inc.*, 315 S.W.3d 888, 891 (Tex. 2010) (orig. proceeding) (citing *In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d at 195).

Generally, the mandatory stay applies only to parties to an arbitration agreement. *Adams v. Ga. Gulf Corp.*, 237 F.3d 538, 540 (5th Cir. 2001) (per curiam). However, the FAA's mandatory stay applies to a nonsignatory to an arbitration agreement if: (1) the

13

arbitrated and litigated disputes involve the same operative facts, (2) the claims asserted in the arbitration and litigation are "inherently inseparable," and (3) the litigation has a "critical impact" on the arbitration. *See In re Devon Energy Corp.*, 332 S.W.3d 543, 548 (Tex. App.—Houston [1st Dist.] 2009, orig. proceeding); *Zuffa, LLC v. HDNet MMA 2008 LLC*, 262 S.W.3d 446, 450 (Tex. App.—Dallas 2008, no pet.*); Rapid Settlements, Ltd. v. SSC Settlements, LLC*, 251 S.W.3d 129, 143 (Tex. App.—Tyler 2008, no pet.). Courts must focus on preserving the right to meaningful arbitration rather than addressing potential harm to the rights of a nonsignatory. *See Waste Mgmt., Inc. v. Residuos Industriales Multiquim, S.A. de C.V.*, 372 F.3d 339, 343 (5th Cir. 2004). "Because the focus is the potential effect of the litigation on the signatory party's right to a meaningful arbitration, the nonsignatory's status as a plaintiff or a defendant in the litigation is not dispositive." *Zuffa*, 262 S.W.3d at 450.

All three elements of this test are met in this case. The arbitrated and litigated disputes involve the same operative facts regarding the interior and exterior coating of the water towers by Diversified using Madison's products and the subsequent delamination and deterioration of the relevant coatings. The arbitrated and litigated disputes revolve around whether the delamination and deterioration resulted from Madison's products or Diversified's application of the products, and, therefore, are inherently inseparable. Finally, if the litigation proceeded with the designation of Diversified as a responsible third party, that ruling would have a critical impact on the arbitration and, in fact, could destroy Diversified's right to a meaningful arbitration. Accordingly, the mandatory stay under section 3 applies to this litigation, and the trial court did not abuse its discretion in granting the motion to stay the litigation pending the

arbitration between relator and Diversified. *See In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d at 187; *Zuffa, LLC*, 262 S.W.3d at 450–51. We overrule relator's second issue.

## VI. RESPONSIBLE THIRD PARTY

By its third issue, relator contends that the trial court abused its discretion in granting Madison's motion to designate Diversified as a responsible third party. A "responsible third party" is defined by statute as:

> [A]ny person who is alleged to have caused or contributed to causing in any way the harm for which recovery of damages is sought, whether by negligent act or omission, by any defective or unreasonably dangerous product, by other conduct or activity that violates an applicable legal standard, or by any combination of these.

TEX. CIV. PRAC. & REM. CODE ANN. § 33.011(6) (West 2008). Madison asserted that Diversified was a responsible third party because the delamination of the top coat from the base coat on relator's water towers resulted from Diversified's "faulty application of the product[s]." According to the motion, after the towers initially suffered delamination, Madison and Diversified recoated the towers utilizing the same products as used in the initial application, but "this time, Diversified followed the specifications for the application process and to date, the towers have held up splendidly, strong evidence that the initial problem was not with Madison's product but with Diversified's faulty application of the product." The motion further asserted that although trial was, at that time, set for May 14, 2012, the pending arbitration order in place between Diversified and relator prevented trial from proceeding before the arbitration was to be completed, thus rendering the motion to designate timely. *See id.* § 33.004(a) (West Supp. 2011) (requiring the motion to designate to be filed on or before the 60th day before the trial date unless the court finds good cause to allow the motion to be filed at a later date).

15

By response filed on or about April 12, 2012, relator contended, in pertinent part:

1. [Madison] never consulted with counsel for [relator] to see if [relator] was opposed to the filing of its Motion for Leave. Please be advised that East Rio Hondo is opposed to the filing of Madison's Motion for Leave to Designate Responsible Third Party.

2. The Motion for Leave is an attempt by Madison to delay the trial of this matter. The trial is scheduled to commence on May 14, 2012.

3. Further, Madison's motion states that the ". . . towers have held up splendidly" after the re-coating by [Diversified]. [Relator] does not agree with this assessment. While it is unknown if new delamination has occurred, the covered metal tank is showing oxidation and rusting and even this does not mean that no further problems will occur.

The trial court granted Madison's motion to designate Diversified as a responsible third party on May 3, 2012. The matter did not proceed to trial on May 12, 2012.

We first address whether or not this ruling is subject to review by mandamus. Courts of appeals have disagreed about whether a party that is aggrieved by a trial judge's erroneous ruling on a responsible-third party issue has an adequate remedy by appeal. Some courts have granted mandamus relief. *See, e.g., In re Smith*, 366 S.W.3d 282, 288–89 (Tex. App.—Dallas 2012, orig. proceeding); *In re Oncor Elec. Delivery Co. LLC*, 355 S.W.3d 304, 305 (Tex. App.—Dallas 2011, orig. proceeding); *In re Brokers Logistics, Ltd.*, 320 S.W.3d 402, 408 (Tex. App.—El Paso 2010, orig. proceeding); *In re Arthur Andersen LLP*, 121 S.W.3d 471, 485–86 (Tex. App.— Houston [14th Dist.] 2003, orig. proceeding [mand. denied]). Others have denied mandamus relief, holding that appeal is ordinarily an adequate remedy for such errors. *See, e.g., In re Unitec Elevator Servs. Co.*, 178 S.W.3d 53, 63-–64 (Tex. App.— Houston [1st Dist.] 2005, orig. proceeding); *In re Martin*, 147 S.W.3d 453, 459–60 (Tex. App.—Beaumont 2004, orig. proceeding); *see also In re SDI Indus.*, No. 13-09-00128-

CV, 2009 Tex. App. LEXIS 1955, at \*\*2–4 (Tex. App.—Corpus Christi Mar. 23, 2009, orig. proceeding) (mem. op.); *In re Scoggins Constr. Co.*, 13-08-00548-CV, 2008 Tex. App. LEXIS 7894, at \*\*1–2 (Tex. App.—Corpus Christi Oct. 15, 2008, orig. proceeding) (mem. op.); *In re Scoggins Constr. Co.*, No. 13-08-00317-CV, 2008 Tex. App. LEXIS 7626, at \*\*1–2 (Tex. App.—Corpus Christi June 30, 2008, orig. proceeding) (mem. op.).

Weighing public and private interests, and recognizing that the adequacy of an appeal depends on the facts involved in each case, we conclude that review by mandamus is appropriate in this cause. *See In re McAllen Med. Ctr.*, *Inc.*, 275 S.W.3d 458, 469 (Tex. 2008) (orig. proceeding); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 136–37. While the trial court's ruling certainly could be reviewed on appeal after the trial of this cause, the erroneous designation of a responsible third party could skew the trial proceedings, potentially affect the outcome of the litigation, and compromise the presentation of relator's case in ways unlikely to be apparent in the appellate record. *See In re Brokers Logistics, Ltd.*, 320 S.W.3d at 408; *In re Arthur Andersen LLP*, 121 S.W.3d at 485–86. Accordingly, we address whether the trial court abused its discretion in allowing Madison to designate Diversified as a responsible third party.

Chapter 33 of the Texas Civil Practice and Remedies Code sets forth the statutory scheme for proportionate responsibility in tort and deceptive trade practice actions. *See* TEX. CIV. PRAC. & REM CODE ANN. § 33.003 (West 2008). Section 33.004(a) of the code provides:

> A defendant may seek to designate a person as a responsible third party by filing a motion for leave to designate that person as a responsible third party. The motion must be filed on or before the 60th day before the trial

17

> date unless the court finds good cause to allow the motion to be filed at a later date.

*Id.* § 33.004(a). A court is required to grant leave to designate the named person as a responsible third party unless another party files an objection on or before the 15th day after the date the motion is served. *Id.* § 33.004(f). If an objection is timely filed, the court shall grant leave to designate unless the objecting party establishes: (1) the defendant did not plead sufficient facts concerning the alleged responsibility of the person to satisfy the pleading requirement of the Texas Rules of Civil Procedure; and (2) after having been granted leave to replead, the defendant failed to plead sufficient facts. *Id.* § 33.004(g). By granting a motion for leave to designate a person as a responsible third party, the person named in the motion is designated as a responsible third party for purposes of the Proportionate Responsibility chapter of the civil practice and remedies code without further action by the court or any party. *Id.* § 33.004(h).

As the party opposing a motion for leave to designate a responsible third party, relator bore the burden of establishing two elements: (1) that Madison did not plead sufficient facts concerning Diversified's responsibility to satisfy the general pleading requirements of the rules of civil procedure, and (2) that Madison still failed to plead sufficient facts after having been granted leave to replead. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 33.004(g). None of relator's arguments in its written response to Madison's motion for leave to designate addressed the sufficiency of Madison's pleadings. Accordingly, relator has failed to meet its burden under section 33.004(g)(1). *See id.*; *In re Smith*, 366 S.W.3d 282, 286–87 (Tex. App.—Dallas 2012, orig. proceeding); *see also* TEX. R. APP. P. 33.1(a)(1)(A) (stating that party must state the grounds for the ruling it sought from the trial court "with sufficient specificity to make the

18

trial court aware of the complaint, unless the specific grounds were apparent from the context"). Because relator's response and objection to the motion for leave to designate was insufficient under section 33.004(g), the response could not and did not shift any burden to Madison to request leave to replead. *See In re Smith*, 366 S.W.3d at 286–87. We overrule relator's third issue.

## VII. CONCLUSION

The Court, having examined and fully considered the petition for writ of mandamus, the responses thereto, and the reply, is of the opinion that relator has not shown itself entitled to the relief sought. Accordingly, the petition for writ of mandamus is DENIED. *See* TEX. R. APP. P. 52.8(a).

ROSE VELA
JUSTICE

Delivered and filed
29th day of October, 2012.